## ABEL WHITNEY *v*. JOHN LYNDE.

A. was holden for B. as surety on a note given on the purchase of certain land by B.   B. proposed to sell a part of the land to C., and take, in part payment therefor, a horse at $55 ; and A., on being consulted by B. in reference to the sale, told B., that, if he traded with C., he, A., would take the horse at the same price he was to allow to C.   B. traded with C. ; and it was held that the *conversation* between A. and B. was no evidence whatever of a sale of the horse from B. to A., or from C. to A., the horse never having been in A's possession.

Where personal property is sold, which is in the custody of a third person, the vendee must himself, or by some person other than the vendor, give

notice of the sale to the person in whose possession the property is, and such person must assent, and agree to keep the property for the vendee, or it will be liable to be attached by the creditors of the vendor.

Each party has a right to have the law stated correctly to the jury on the facts, as he claims them to have been proved, where testimony has been given tending to sustain his view of the proof.

TRESPASS for taking a certain mare. Plea, the general issue, with notice of a justification of the taking the mare by virtue of an execution against one Riley Whitney, and as his property ; trial by jury.

The plaintiff, to support the issue upon his part, introduced testimony tending to prove that, in April 1839, one Riley Whitney, a brother of the plaintiff, purchased a lot of land in Moretown, giving, among others, a note for $75, which was signed by the plaintiff as surety. That in the fall of 1840 the said Riley sold one half of the land to one Stiles, and received, in part payment therefor, the mare, for the taking of which this action is brought. That, before the trade with Stiles, Riley consulted with the plaintiff in reference to it, and that the plaintiff then told Riley, that he, plaintiff, would take said mare at $55, the price which Riley was to allow for her in case he traded with Stiles. That, soon after Riley concluded the trade with Stiles, Riley went to the plaintiff's house in Worcester, to have him take the mare, but that the plaintiff could not then conveniently keep her and requested Riley to keep her for her work. That Riley then kept the mare in his possession until March, 1841, when he took her to Williamstown, and endeavored to sell her to one Covill,—who declined buying her. That Riley then took the mare again to the plaintiff, and requested him to take her,—but that the plaintiff declined, as he had not sufficient hay to keep her. That Riley then informed the plaintiff that he had had some talk with Covill about buying the mare, or taking her to keep for her work, and that the plaintiff then told Riley that he thought he, Riley, had better let Covill have the mare for $55, if he would take her at that price, and if not, that he had better let Covill take her and keep her for her work, if he would do so. That Riley again endeavored to sell the mare to Covill for $55, but, Covill declining to buy, Riley finally agreed with him to take the

mare, and keep her for her work; and that Covill took her accordingly, and kept her until she was taken from his possession by the defendant. That while Covill had the mare in his possession, he and the plaintiff had some conversation in reference to her, and the plaintiff tried to have Covill buy her, but Covill declined, and the plaintiff then told him to keep her until he called or sent for her. This last remark was made as Covill was going out of the house where the conversation was had.

The plaintiff also introduced testimony tending to prove that he paid the note for $75, and that he paid a part in May, 1841, before the attachment, and a part after the mare was attached.

The defendant proved that he was constable of Moretown, and that he took and sold the mare by virtue of a regular execution against Riley Whitney; also, that about $200 of the avails of the said land had been paid to the plaintiff. The defendant also introduced testimony tending to prove that, previous to said attachment, Riley had called the mare his own, and had repeatedly endeavored to sell her, and had stated that the plaintiff had no interest in the mare; and that the plaintiff had stated that Riley had tried to have him buy the mare, but that he told Riley she was too small, and he did not want her.

The defendant also introduced said Covill as a witness, who testified that he took said mare of Riley Whitney, to keep for her work, and that neither said Riley, nor the plaintiff, ever informed him that the mare belonged to the plaintiff, prior to the attachment, and that he never agreed to keep the mare for the plaintiff in any way; and that he never heard the plaintiff tell him to keep the mare until he, plaintiff, called or sent for her.

The defendant requested the court to charge the jury; 1, That the conversation, which passed between the plaintiff and Riley Whitney, in referance to the plaintiff's taking the mare, at the time of the consultation respecting Riley's trade with Stiles, would not constitute or amount to a sale, so as to pass the property in the mare to the plaintiff, either from Stiles, or from Riley; and that, unless they found a sale of the mare to the plaintiff, they would find a verdict for the defendant; and, 2, That, if they found that the property in the mare passed from Stiles to Riley, and that she was sold by Riley to the plaintiff, but that she remained in the possession of

Riley, and Riley employed Covill to keep her for her work, and, while so in Covill's possession, she was attached and sold as the property of Riley, they would find their verdict for the defendant, unless they found the fact, that Covill, at the time he took the mare, was informed that she was the property of the plaintiff, or the plaintiff notified Covill, before the attachment, that the mare belonged to him, and that Covill heard and understood the same, and consented to keep her for the plaintiff.

The court refused to instruct the jury as requested, but did instruct them, among other things, that, if they found from the terms of the contract between the plaintiff and Riley and Stiles, that the property in the mare passed directly from Stiles to the plaintiff, in consequence of his having paid the $75 note, and that she was received by the plaintiff in such a manner that he thereby gave Riley credit in part for such payment, the plaintiff would be entitled to recover. Or if, at any time before the mare was attached, Riley sold her to the plaintiff in part consideration for his having paid the $75 note, the plaintiff would be entitled to recover, provided, the jury found, that, at the time she was attached, she was in the possession of the plaintiff, or of some other person for him.

The jury were further told, that if, when Riley put the mare into the possession of Covill, he informed Covill that the plaintiff owned her, the possession of Covill would be the possession of the plaintiff; and that, if Riley, at the time of putting the mare into the possession of Covill, did not inform him that the plaintiff owned the mare, still if the plaintiff afterwards informed Covill that he owned the mare, and requested Covill to keep her for him, and Covill made no objections, and the mare continued there in his possession until she was attached, she was legally in the possession of the plaintiff, and was not liable to be attached by the creditors of Riley, provided the jury first found that the plaintiff, in good faith, owned the mare.

The jury returned a verdict for the plaintiff. To the charge of the court, and their refusal to charge as requested, the defendant excepted.

*O. H. Smith* for defendant.

1. It is insisted by the defendant that the court erred in refus-

ing to charge the jury that the conversation between the plaintiff and Riley Whitney, at the time of the consultation in reference to the sale of the land, would not amount to a sale, so as to pass the property in the mare.

To constitute a valid contract for the sale of goods, it must be mutually binding. Chit. on Cont. 4, 108. No contract is raised by a mere affirmation in discourse, a mere overture, or offer, to enter into an agreement, not definitely and expressly assented to by both parties. Chit. on Cont. 4. What facts will amount to a sale of personal property is clearly a question of law, to be decided by the Court. 1 Aik. 116, 344. The law is well settled, that, without a delivery of the goods by the vendor, the price not having been paid, the property is not divested, and the vendee cannot seize it, or maintain trover for it. 1 Aik. 344.

2. The county court erred in not charging the jury in accordance with the defendant's second request.

The plaintiff claims that what was said between him and his brother, at the time of the consultation before alluded to, amounted to a sale, and that he obtained a constructive possession by reason of his having remarked to Covill, as he was about leaving the house where they then were, that he wished Covill to keep the mare until he called or sent for her. The effect of this notice might be to constitute Covill the plaintiff's agent in keeping the mare, if heard and understood by him, and might amount to that change of possession which is required to constitute a valid sale as against creditors. The object of such a change of possession is to give public notice of a sale sufficient to put purchasers and creditors on their guard. (See *Barney* v. *Brown*, 2 Vt. 374.) If a notice not heard or understood would be sufficient, a notice in a foreign language would be equally efficacious.

3. The court erred in leaving it to the jury to find that the property in the mare passed directly from Stiles to the plaintiff, in consequence of his having paid the $75 note. Riley Whitney was clearly the vendor of the land to Stiles, and the property in the mare must pass to Riley, and the plaintiff, if he purchased her of any one, purchased her of Riley ; and, besides, there was no evidence showing a payment of any part of the $75 note, until May 1841. The change was therefore calculated to mislead the jury.

4. The court erred in charging the jury, that, if the plaintiff informed Covill that he owned the mare, and requested him to keep her for the plaintiff, and Covill made no objections, she was legally in the plaintiff's possession. The object of such notice was thereby to give public notice. When Covill first received the mare, he held her as agent of Riley, and, if enquired of, would necessarily so state, if he told the truth. There was direct evidence that Covill did not hear the notice attempted to be given to him. The attention of the court was particularly called to this branch of the case, and it was the duty of the court to instruct the jury as to the object of such notice, and the effect of the evidence in the case on that point. The charge of the court would leave the jury naturally to infer that, if the plaintiff said in the presence of Covill that he owned the mare, and requested Covill to keep her for him, he had done all that the law required of him, and therefore it was of no consequence to the plaintiff whether Covill heard him or not.

*L. B. Peck,* and *Heaton & Reed* for plaintiff.

1. In the refusal of the court to charge, as first requested by the defendant, there was no error. For it was the terms of the contract, and the actual transaction between the three parties concerned in making it, and at the time of making it, and not a previous consultation between two of them, which made the mare the plaintiff's, or Riley Whitney's. Whatever might have been the language in which the consultation was had, it was important only as tending to explain the contract afterwards made, which might have been in pursuance of the consultation, or very different. The jury still having to determine the actual terms of the contract, this request was upon a point not material, and the compliance of the court could not have aided the defendant. We suppose that the defendant's counsel might, with as much propriety, have selected any other minute portion of the testimony, remote from the point at issue, and asked the court to charge that that did not pass the property in the mare to the plaintiff. *Mack et al.* v. *Snider,* 1 Aik. 104. *Holbrook et al.* v. *Hyde,* 1 Vt. 286.

2. As to the request to charge in regard to the notice to Covill of the ownership of the mare, we can see no substantial difference between the charge requested and the charge given, unless it shall

be insisted that the terms of the charge, that the plaintiff informed Covill, are not equivalent to the terms of the request, that Covill heard or understood from plaintiff. The plaintiff could not have informed Covill, as we conceive the import of the word, unless he made Covill both hear and understand that of which he attempted to inform him. A party cannot claim instructions in any precise form. It is sufficient that they are given in any form. *Holbrook et al.* v. *Hyde,* 1 Vt. 286.

3. In the charge of the court in relation to possession and notice of ownership, there was no error. A delivery of the mare to Covill, with notice that she was the plaintiff's, and the jury having found the fact that she was the plaintiff's, is the substantial, visible change of possession required by our laws. Covill's receiving her with such notice made him keeper for the plaintiff. And the notice by plaintiff, with the request to keep, to Covill, who, by not objecting, consented, is sufficient. *Barney* v. *Brown,* 2 Vt. 374. *Spalding* v. *Austin,* 2 Vt. 555. *Pierce* v. *Chipman,* 8 Vt. 334.

The opinion of the court was delivered by

WILLIAMS, Ch. J. It is unnecessary to recapitulate the facts, which are stated in the case. It is enough to say, there was evidence tending strongly to prove the defence, as claimed by the defendant. The defendant claimed, and requested the court to charge the jury, " that the conversation, which, passed between the plaintiff and Riley Whitney, in reference to the plaintiff's taking the mare, at the time of the consultation respecting the said Riley's selling a part of said lot of land to Stiles, would not constitute, or amount to, a sale, so as to pass the property in the mare to the plaintiff, either from Stiles, or from Riley Whitney." The defendant also relied on the well established principle of a fraud in law, and requested the court to charge the jury, that, if Riley Whitney alone employed Covill to keep the mare, and she was attached while in Covill's custody, they would find for the defendant, unless they found that Covill, at the time he received the mare, was informed that she was the property of the plaintiff, or the plaintiff notified him that she belonged to him, and Covill heard and understood the same, and consented to keep her for the plaintiff.

In both of these positions the defendant was right, if the evidence

74

sustained him. The sale was not completed at that time; something farther was to be done. Indeed the whole evidence, as detailed, fails of showing any sale. As to the facts and evidence, however, we have nothing to do.

As to the question of fraud in law, we think that, if Riley Whitney owned the mare, and sold her to the plaintiff while she was in the keeping of Covill, it was necessary for the *plaintiff himself* to give notice to Covill of the transfer, or cause it to be done by some person other than the vendor, and that Covill should have assented and agreed to keep her for the plaintiff. Without this notice the possession cannot be considered as changed, so that the property should not be subject to attachment at the suit of the creditors of the vendor. This was the doctrine recognized in the case of *Judd et al.* v. *Langdon*, 5 Vt. 231, and, more fully, in the case of *Pierce* v. *Chipman*, 8 Vt. 334.

The charge of the court on both of these points is liable to objection. The request first mentioned above was not noticed, but the whole subject was left to the jury, for them to find, whether, from the terms of the contract between the plaintiff and Riley Whitney and Stiles, the property passed directly from Stiles to the plaintiff, and was received by the plaintiff in such a manner that he thereby gave the said Riley credit therefor. The defendant was entitled to a charge stating what the law was on the facts, as he claimed them to have been proved. The court, although they may have given the law correctly on another state of facts, do not state it, as they should, on the state of facts as claimed by the defendant, and as the evidence clearly tends to prove them to be.

On the other point the court directed the jury, that, if Riley Whitney, the vendor, informed Covill that the plaintiff owned the mare, the possession would be in the plaintiff,—assuming the ground that notice from the plaintiff was not necessary, and that a vendor, who has owned and offered to sell property, treating it as his own, and who has never been out of the possession and use of it, by merely giving notice to a third person that he has sold the property,—which he might do from sinister motives,—can prevent his creditors from attaching the property, at the hazard of its being proved that there was a sale, unknown to every one but the vendor. We apprehend the law to be otherwise, and that the defendant was

correct in his views of the law, and had a right to have the jury instructed accordingly.

The latter part of the charge is also objectionable, as it does not lead the attention of the jury to a material fact, which the defendant claimed was proved,—or rather, it diverted their attention from it entirely,—that is, whether Covill heard and understood the directions of the plaintiff, and consented to keep the mare for him.

The judgment of the county court is therefore reversed.