FRANCIS A. BIRGE AND EDWARD W. BIRGE v. JACOB EDGERTON.

*Contract. Fraud in law.*

Construction of a contract for the sale and delivery by G. & G. G. to the plaintiffs, of a quantity of logs, as to the place of delivery, and time when the property would vest in the plaintiffs.

The rule recognized and laid down in *Hutchins* v. *Gilchrist*, (23 Vt. 82,) in reference to the possession and change of possession of logs, upon the land of a third person, applied to the facts in the present case.

TROVER for the conversion of a quantity of logs. Plea, the general issue; trial by jury, March Term, 1855,—PIERPOINT, J., presiding.

The taking of the property was admitted; and it was admitted

that the defendant, as sheriff of Rutland county, took them upon writs of attachment against George and Gardner Griffith, as their property, and that the same were regularly disposed of upon executions subsequently obtained against said Griffiths.

The plaintiffs introduced in evidence, a contract executed by them and George Griffith and Gardner Griffith, which was as follows.

"*Agreement made this twenty-first day of December*, 1853, *between*
" *G. & G. Griffith, of*      *      *.      *      *of the first part, and*
" *Francis A. and Edward W. Birge, of*   *      *      *      *of*
" *the second part*                        WITNESSETH:

" That the said party of the first part, for and in consideration
" of the agreement hereinafter contained, agrees to sell and deliver
" to the said party of the second part, good sound beech, birch,
" maple and basswood logs, to be delivered and loaded on the cars
" of the Western Vermont railroad, at the station in the town of
" Danby, or the one nearest thereto, by the first day of August,
" 1853, to the amount of three hundred cords.      *      *      *
     *  [ Stipulations as to the size and quality of the logs, &c.]      *

     *      *    "And the said party of the second part, in consid-
" eration of said logs to be delivered as aforesaid, agree to pay
" to the said party of the first part, the sum of four dollars for
" each cord so delivered,—payments to be made as follows, viz:
" Whenever fifty cords are delivered at the side of the said Western
" Vermont railroad, at Danby, as aforesaid, the said party of the
" second part will pay to the party of the first part one-fourth
" part of the price thereof in cash, and for the remaining three-
" fourths, will give their promissory note, payable at the Farmers'
" Bank in the city of Troy aforesaid, at six months ; and the same
" for each fifty cords, whenever delivered as aforesaid."

Further testimony was introduced by the plaintiffs, which tended to prove that, in pursuance of said contract, the said Griffiths cut on their own land, and drew and delivered for the plaintiffs, by the side of the Western Vermont railroad, in Danby, 200 cords of the logs, being those mentioned in the declaration; that as often as they so delivered fifty cords, they notified the plaintiffs, and the plaintiffs paid them therefor four dollars per cord, as specified and provided for in said contract; that the place where the

logs were deposited, was upon the land of Jesse Lapham, adjoining the station or depot grounds of the Western Vermont Railroad Company, in Danby.

The defendant's evidence tended to prove that, after making the said contract, one Seth Griffith, who had a similar contract with the plaintiffs, for the delivery of another quantity of logs, applied, in behalf of himself and the said G. & G. Griffith, to Aaron R. Vail, then a director of the W. Vt. R. Company, residing in Danby, and informed him of said contract with the plaintiffs, and inquired of him what facilities for the delivery and loading of logs the said railroad company would furnish. The convenience and advantage of Lapham's land, for the purpose of depositing and loading the logs, was spoken of, and it was arranged that said Vail should apply to Lapham, to ascertain whether he would consent to have the logs put upon his land; that he did so, and that either said Vail, or the said Seth, in his hearing, informed Lapham that the said Seth, and the said G. & G. Griffith, had contracts for getting out, and delivering, on the railroad, a large quantity of logs for the plaintiffs, to be transported over the W. Vt. railroad, and asked him to consent that they might be put upon his said land, until they were put on the cars, and that upon such application, said Lapham consented.

The court charged the jury, that if they found that the logs were cut and drawn by the said G. & G. Griffith, upon said contract with the plaintiffs, and placed by the side of the railroad, as stated by the witnesses, and that said Griffiths notified the plaintiffs that they had delivered the logs, and the plaintiffs paid said Griffiths the stipulated price for the logs, agreeably to the contract, that the logs thereupon became the property of the plaintiffs ; and if they found that said Lapham, at the time the logs were placed upon his land, knew that the logs were left there for the plaintiffs, that the logs were not subject to attachment upon the writ against G. & G. Griffith, and their verdict should be for the plaintiffs to recover the value of the logs. Verdict for the plaintiffs. Exceptions by the defendant.

*E. Edgerton* and *S. H. Hodges* for the defendant.

I. By the terms of the contract, the lumber was bought by the

plaintiffs only when loaded on the cars. Until then it was not their property, nor at their risk, although they paid for it before, for the security of the vendors.

II. The place where the lumber was taken, was provided by the vendors for their own convenience, without any participation on the part of the vendees. It will not be denied that, until the price was paid, the lumber continued in their possession, both because the property was unchanged, and because they had a lien upon it for the price.

The situation of it remained unaltered, and no such substantial and visible change of possession ever took place, as would apprise any other purchaser that it no longer belonged to the Griffiths, or such as has been uniformly required by the decisions of this court, to protect a sale against creditors. 1 Aik. 165 ; 2 Aik. 67 ; 2 Vt. 185 ; 4 Vt. 465 ; 5 Vt. 235 ; 6 Vt. 623 ; 8 Vt. 339, 352 ; 11 Vt. 683 ; 12 Vt. 517 ; 13 Vt. 419 ; 16 Vt. 329, 419, 579.

III. The vendors were bound to load the lumber on the cars, and it remained in the place provided by them for that purpose ; so that no constructive change of possession can be presumed, even though the property had been changed.

*C. L. Williams* for the plaintiffs.

The opinion of the court was delivered by

Isham, J. The question in this case arises, whether the logs, for which this suit is brought, were, at the time of the attachment, the property of G. & G. Griffith, or whether they were owned by the plaintiffs. If they were the property of G. & G. Griffith, the defendant was justified in taking them on the attachments in his hands. The contract under which the plaintiffs claim title to this property was made on the 21st of December, 1853, in which G. & G. Griffith agreed to sell to the plaintiffs, three hundred cords of beech, birch, maple and basswood logs, to be delivered and loaded on the cars of the Western Vermont railroad, at the station in Danby, or the one nearest thereto, by the first of August, 1853. Whenever fifty cords were so delivered, the plaintiffs were to pay them one-fourth of the price in cash, and the remainder by a note at six months, payable at the Farmers' Bank, in the city of

Troy; and in the same manner for each fifty cords when so delivered. In pursuance of this contract, the Griffiths cut on their own land, and delivered for the plaintiffs by the side of the Western Vermont railroad, in Danby, two hundred cords of logs, they being the same which were taken by the defendant, and as often as fifty cords were delivered, the plaintiffs were notified of it, and the payment was made for them, as provided in the contract. That delivery of the logs was an appropriation of them for the plaintiffs, and as between the parties to the contract, was equivalent to a delivery by the vendors, and the payment of the price was equivalent to an acceptance of their possession by the plaintiffs. In the case of *Dixon* v. *Yates,* 5 B. & A. 340, it was observed by JUSTICE PARKE, that "the appropriation of a chattel, is equivalent to delivery by the vendor, and the payment of the price is equivalent to the acceptance of possession. The effect of the contract is to vest the property in the vendee." There was nothing further to be done to ascertain the quantity, quality, or value of the property under that contract, and by its terms, the plaintiffs were to receive the logs, at the place where they were deposited. As between the parties to that contract, therefore, we think the plaintiffs have shown a valid title to the logs. The important inquiry in the case, however, arises, whether the plaintiffs have perfected a good title in themselves to that property, as against the creditors of the Griffiths. It is a general principle, that a title to personal property may pass, as between the parties to the contract of sale, and yet be ineffectual as against the creditors of the vendor. To render a sale valid, as against such creditors, the sale must be accompanied by an actual, visible and substantial change of its possession. The use and possession of the property, and its apparent ownership, must not remain with the vendor. This general rule has been too frequently decided in this state to be now called in question, and we feel no disposition to do it. If any difficulty exists, in relation to the authorities on this subject, it has arisen from the application of this principle to doubtful and extreme cases, and not from any doubt that has ever been entertained as to the necessity and soundness of the rule itself.

The logs in question were placed by the side of the railroad, on the land of Jesse Lapham, by his permission and consent, and

upon the advice and request of Mr. Vail, one of the directors of the railroad. That place was selected, as affording the best facilities for placing the logs on the cars of the road. Mr. Lapham was notified, at the time his consent was given, that the Griffiths had a contract for delivering on the railroad, a large quantity of logs for the plaintiffs, to be transported over the road to them. The same notice was given to Mr. Vail, at the time he rendered his assistance in obtaining this place for their deposit. Both Mr. Lapham and Mr. Vail then knew that, when the logs were deposited in that place, they were left there for the plaintiffs. In the appropriate and emphatic language of the court, in the case of *Hutchins* v. *Gilchrist*, 23 Vt. 88, "the land where the logs were deposited, became the ware-house of the purchasers." Under such circumstances, the logs cannot be considered as remaining even in the constructive possession of the vendors.

On the question as to the sufficiency of the change of possession of the logs, the case of *Hutchins* v. *Gilchrist* is a very decisive authority; indeed it is impossible to sustain the attachments made by this defendant, without overruling the authority of that case. In that case, as in this, the sale was of a quantity of logs, lying upon the land of a third person, and placed there with the consent of the owner of the land, given to the vendor of the property. If, in that case, the land could be regarded as the warehouse of the purchaser, much more will it be so considered in this case, where it was by the license of Mr. Lapham, that the logs were deposited there for the plaintiffs, and for the purpose of completing the delivery of them under that contract. The court, in that case, also observed that " it was not necessary to render a sale of logs, under such circumstances, valid, as against the creditors of the vendor, that there should be a change in their situation ; and that there might be a change in the possession, while the *site* of the property remained the same." That principle has always been applied to property of this kind, and where, from its cumbrous character, it was impossible or difficult to make a more visible and substantial change of its possession. The rule was so recognized in the case of *Hutchins* v. *Gilchrist*, in *Sanborn* v. *Kittredge*, 20 Vt. 639, and in *State* v. *Barker*, 26 Vt. 650. The same general rule, and a similar application of it, has been sustained in Connecticut and Massachussetts :

*Mills* v, *Camp*, 14 Conn. 219; *Naylor* v. *Dennie*, 8 Pick. 198; *Tansley* v. *Zuner*, 29 Com. L. 288.

It was insisted that the provision in the contract, that the logs were to be delivered and loaded on the cars of the railroad, rendered it necessary that they be actually placed on the cars, before the delivery of the property to the plaintiffs was complete, and that until the logs were so placed on the cars, they remained in the possession of the Griffiths. It appears from the case, that it was the understanding of all the parties, that the logs were to lie where they were deposited, by the side of the road, until they were placed on the cars, from time to time, as the plaintiffs should direct. Under these circumstances, we think that placing the logs on the cars had no connection with their delivery to the plaintiffs, nor with the title to them. It is rather to be considered as a contract on the part of the Griffiths, to render that service for the plaintiffs on property belonging to them, the title and possession of which had become perfected and vested in them, not only as against the Griffiths, but also as against their creditors. We think, therefore, that this property was not subject to be attached, as the property of the Griffiths, and that the plaintiffs are entitled to recover.

The judgment of the county court is affirmed.