## RICE & DANENBAUM *v.* STACY COURTIS.

*Conflict of laws. Assignments for the benefit of creditors. Attach-
ment. Sale.*

The local rule of policy established in this State, requiring a complete change
of possession, in cases of the transfer of personal property, in order to
exempt it from attachment upon process against the transferor, is universal
in its application to all personal property actually within the State; and it
therefore applies to and governs the transfer of such property, though it be
owned by a resident of another State, and be there transferred in conformity
with the laws thereof, which do not require such a change of possession to
exempt such property from such attachment.

The modification of this rule as applicable to property, which, at the time
of the transfer, is in the hands of a third party, is as much a matter of local
policy as the principal rule itself, and a full compliance with it is equally
requisite, in all cases of the transfer of personal property within this State
in the hands of a third person, to prevent its attachment upon process
against the transferor.

When property in the possession of a third party is assigned, mere notice,
from the assignee to such third party, of the assignment is not sufficient to
prevent its attachment upon process against the assignor.

It seems to be indispensable in order to remove the liability of property so
situated to attachment as the property of the assignor, that the assignee
should make the person, having it in his possession, his bailee; that the lat-
ter should consent to hold the property for the assignee. This consent
would undoubtedly be inferred from the silence of the bailee upon a request
being made upon him by the assignee to keep it for him. REDFIELD, Ch. J.

The right to attach personal property which has been transferred without a
compliance with the rule of policy of this State, requiring a change of pos-
session, is not confined to the mere *creditors*, in a technical sense, of the
vendor; but it belongs to all those who seek to enforce any right or claim
against him by means of the process of attachment.

TRESPASS for a quantity of dry goods, and a horse, sleigh
and harness. Plea, the general issue, and trial by jury, at the
March Term, 1859,—BENNETT, J., presiding.

On trial it appeared that the property in question, on the 17th
of December, 1856, and previous to that time, was owned by
William Cane and Marcus Cane, and was then in the possession
of the latter at Vergennes and New Haven, in this State, he
being a peddler, and being then engaged in peddling the goods in

Vermont, and using the horse, harness and sleigh in that business.

On that day William Cane and Marcus Cane, who were domiciled and doing business in the city of New York, being insolvent, made in that city an assignment to the plaintiffs, also residents of New York, of all their property for the benefit of their creditors, certain of whom were preferred in the assignment, and among them the plaintiffs.  This assignment was not executed by Marcus Cane at that time on account of his absence in Vermont, but it was afterwards executed by him in New York, on the 20th of December, 1856.

The property in question, in this State, constituted but a small portion of the property embraced in the assignment, the remainder being all in New York.

The assignment was in all respects in conformity with the laws of New York, and it was admitted by the defendant that if it were to be controlled as to this suit by those laws, it was valid against all parties to pass the property in question to the plaintiffs.  But, on the other hand, neither the assignment nor the course pursued by the plaintiffs under it, were in compliance with the statutes of 1852 and 1855, relating to assignments for the benefit of creditors, it being general and not specific in its terms, the assignees being creditors, and no copy of the assignment, nor any bond having been filed by the assignees in any county clerk's office or probate court, respectively, as required by those statutes.

On the 18th of December, 1856, immediately after the execution of the assignment by William Cane, the plaintiff, Danenbaum, came to Vergennes, in this State, where Marcus Cane then was with the horse, harness and sleigh, and the greater part of the goods in question, the remainder of them having been left by him the day before at New Haven, in the charge of one Stow.  On his arrival at Vergennes, on the 19th of December, Danenbaum took possession of all the property there belonging to the assignors and sent a messenger to Stow, at New Haven, to inform him that the goods left in his charge by Marcus Cane had been assigned to the plaintiffs.  The messenger delivered this message to Stow on the 20th of December, 1856, and also told him that Danenbaum had directed him so to inform him.

Danenbaum, after having taken possession of the property at Vergennes and sent this message to Stow, placed the property in Vergennes in the charge of a third person, and returned to New York with Marcus Cane. He took no further steps in relation to any change of possession, or notice to Stow of a change of title in respect to the goods at New Haven, than are above stated.

On the 2d of January, 1857, the defendant, who was a resident of Massachusetts, caused the property in question, which still remained at Vergennes and New Haven in the same position as when Danenbaum left the former place for New York, to be attached and taken upon a writ in his favor against Marcus Cane and William Cane, in an action of trover, which suit, at the time of the trial of this cause, was still pending in the courts of this State.

Upon these facts, the county court directed the jury to return a verdict for the plaintiffs for the value of all the property in question, both that at Vergennes and that at New Haven, to which the defendant excepted.

*L. E. Chittenden,* for the defendant, claimed, first, that the assignment did not operate upon the property in question because it was not in conformity with the statutes of this State, passed in 1852 and 1855, relating to assignments for the benefit of creditors, and cited on this point the same authorities as those cited by the counsel for the plaintiff in the case of *Hanford* v. *Paine and trustee,* ante p. 442; secondly, that if the assignment were operative, notwithstanding those statutes, still there was no such possession taken by the assignees of the property at New Haven, as was necessary under the settled policy of this State, to protect it from attachment as the property of the assignors. The message from Danenbaum to Stow was, at best, a mere notice to the latter of the assignment, without any undertaking on the part of the bailee to keep the property for the assignee, or even a request from the assignee to him that he would do so; *Whitney* v. *Lynde,* 16 Vt. 579.

*George F. Edmunds* and *William G. Shaw,* for the plaintiffs.
1. The assignment in question is not affected by the laws of

Vermont, either the statutes of 1852 and 1855, relating to assignments for the benefit of creditors, or the common law principle of this State, requiring an actual change of possession to exempt the property from attachment in suits against the assignors. The assignment was purely a New York assignment, the parties to which were all residents of New York, and the great bulk of the assigned property situated there. It is therefore to be governed by the laws of New York, as to all the personal property embraced within its terms, even though a portion of it was at the time within this State. By the laws of New York the case finds that the assignment was in all respects valid to pass the property in question fully to the plaintiffs.

In support of these views we cite the same authorities relied on by the counsel for the trustee in the case of *Hanford* v. *Paine and trustee*, ante p. 442.

2. But even if it be a settled rule of policy in this State, applicable to all personal property within its limits, without regard to the domicil of the owner, or the place where he makes a contract transferring it, that there should be a complete and actual change of possession, in order to exempt it from liability to attachment as the property of the assignor, still this law, or policy, of this State was fully complied with, even in regard to the property at New Haven.

The strict rule of constructive fraud, grounded upon a retention of possession by the vendor after sale, does not apply to cases where the property is in the hands of a third person. The rule is wholly one of policy merely, and has been sustained only on account of the frauds which it is supposed would be the consequence of its abrogation. These frauds consist in the deceit and imposition to which the public would be subject in regard to the ownership of the property. It is a natural presumption that personal property belongs to the person who has the possession of it; and the law has made this presumption a conclusive one where the owner of personal property retains possession after he has sold it; *Judd* v. *Langdon*, 5 Vt. 235. But it is neither a natural nor reasonable presumption to suppose that property in A.'s hands belongs to B., and even if one does think so, he has no right to act upon such an idea, until he has made proper and

Rice & Danenbaum *v*, Courtis.

reasonable inquiries into the true condition of the title. The public being thus put upon inquiry in such cases, all that is nec-essary to be done to make a valid assignment, is to give the depositary such information as will enable him to disclose the facts on inquiry being made of him. This is fully accomplished by a notice from the vendee of the sale to him. There need be no express request from the vendee to the bailee to hold the prop-erty for him. That is implied from the notice of the sale; *Carter* v. *Willard*, 19 Pick. 1; *Peirce* v. *Chipman*, 8 Vt. 334; *Harding* v. *James*, 4 Vt. 465, WILLIAMS, J.; *Merritt* v. *Miller*, 13 Vt. 419; *Potter* v. *Washburn*, 14 Vt. 564; *Shephard* v. *Briggs*, 26 Vt. 153; *Knowles* v. *Horsfall*, 7 Eng. Com. Law 46; *Tucker* v. *Ruston*, 12 *ib.* 38; *Harmon* v. *Anderson*, 2 Camp. 243; *Hutchins* v. *Gilchrist*, 23 Vt. 87; *Gibson* v. *Stevens*, 8 Howard 384.

3. Curtis was not a *creditor* of the assignors within the mean-ing of the statute of 1852. His claim was merely for damages for a *tort*, and his action was trover; *Beach* v. *Boynton*, 26 Vt, 736; *Fox* v. *Hills*, 1 Conn. 300-3-4-7; *Fowler* v. *Frisbie*, 3 Conn. 320; *Paul* v. *Crooker*, 8 N. H. 288.

The word " *creditors* " occurs in the 1st, 2d, 3d, 6th and 8th sections of the act of 1852, and in all these instances the mean-ing is plainly such as would exclude the defendant. There is no reason why the word should have a different meaning in the 4th section. See also act of 1855, p. 15.

REDFIELD, Ch. J. The main question involved in this case is the same as that just decided in the case of *Hanford v. Paine and trustee*. But there is here the further question, whether any change of possession is requisite in order to put property in this State, when assigned for the benefit of creditors by an act done legally out of the State, beyond the reach of the process of our courts against the assignor.

The only ground upon which it is urged that such a change of possession is required in order to perfect the assignment when made out of the State is, that this is a rule of policy uniformly required in the transfer of all personal property within the State as a visible index of its being no longer liable upon process against the former owner; that it is no part of the contract of assign-

ment, to be controlled by the law of the place of assignment, but a matter purely of local policy, to prevent fraud, and therefore not a matter to be controlled by the contract, or by the law governing the contract, but a local form or act to be governed by the law of the forum where the property is situated and the remedy sought.

There is no doubt of the existence and universal recognition of such an exception to the operation of foreign contracts, valid by the law of the place where made. The rule is more commonly illustrated by foreign contracts affecting religion, morals or State policy, the enforcement of which, in our courts, would be of evil example to our citizens. We may suppose the case of an action to recover damages for some failure to perform a recognized duty by the priest or other officials connected with the sacrificial rites of the pagan religion, in some country with which our Republic maintains friendly diplomatic relations, or some proceedings to enforce contracts for the endowment of pagan temples, or the maintenance of the general institutions of the faith of some country not christian. The trial of such an action would involve, of course, the examination and comprehension, to some extent, by the jury, of the general subject matter, which could scarcely fail to produce a corrupting influence upon the citizens of a professedly christian country.

The same course of reasoning will illustrate the impropriety of giving relief, by way of action, for the non-performace of contracts made in a foreign country, affecting duties and obligations, when their sense of propriety is in conflict with our own. For instance, contracts for the destruction of one's parents, or for prostitution, or for the maintenance of fifty wives, which is much of the same character with prostitution, according to our views, may all be held perfectly valid in some countries. We all understand that such has been the case in some countries during the world's history. Still, no one would expect to maintain an action here founded upon any such consideration. It would be revolting to the public sense.

The same is true in regard to transactions in conflict with some statutory provisions affecting public police, such as gambling, horse racing, and the unrestricted sale of ardent spirits,

31

when the transactions forming the basis of the contract, have, in any respect, transpired in this State. So, too, in regard to matters affecting trade and merchandize merely, as the inspection of leather, for instance, the violation of any statutory requirement is sufficient ground for denying all remedy upon contracts based upon such consideration, although the article sold here may be of the most perfect quality, far above the statutory requirement.

It is now claimed that the requirement of a change of possession in the transfer of personal property, in order to put it beyond the reach of the process of our courts against the former holder, is a matter so far affecting the settled policy of our jurisprudence upon the subject, that it cannot be dispensed with, out of deference or comity to the law of any other State. This case is not as obvious as some of those already stated.

It does not depend upon the question whether the rule of policy which is contravened by a foreign contract is of a statutory character or one established by the decisions of the courts. It depends upon the point how far it is a matter affecting the settled and uniform policy of the State, so as to be applicable to all similar transactions without the State, something local and permanent, pertaining to the local policy of the forum, which is not transitory or a thing pertaining to the contract. If it be of this character, it can no more be dispensed with out of deference to the law governing a foreign contract, than could the institutions of religion or the fundamental principles of morality.

The subject may be illustrated by the contract of sale. The contract itself must be so executed as to be valid by the law of the place where made, in contemplation of the courts. That is commonly the law of the place of the domicil of the seller, unless the contract is made with reference to the law of some other place. It is not always the law of the very place where the contract is in fact made, but the law with reference to which the contract is presumed to have been made, that governs the incidents of the contract itself, and determines their extent and validity. But the contract, when made in conformity to these incidents, will be effectual to transfer the title of things personal, wherever situate, unless it contravenes some requirement of the local law which affects the transfer of all similar property within

the jurisdiction. If the requirement affect the contract merely, as, for instance, that it be in writing or under seal, it will not extend to contracts executed in other States. But if it be some-thing adhering to the property itself, then it will affect all contracts in relation to such property, wherever made. As, for instance, those regulations in regard to assignments for the benefit of creditors, in the act of 1852, if made to apply to all personal property within the State, could not be dispensed with, even in reference to assignments made out of the State. But as they were made to attach only to this particular class of contracts, they are only binding with reference to such contracts made within the State, or by an assignor domiciled within the State at the time.

There is no doubt this requirement of change of possession is a rule of policy, to a considerable extent, and one which in this State has been regarded of very essential importance to the security of good order and the just rights of our citizens. It is, too, a rule which is made to apply to all personal property which is liable to attachment, whether in the ordinary mode or by process of foreign attachment. There is no other similar requirement which is made to attach to the property, and to all personal property liable to attachment and not to the contract of transfer.

We say indeed, sometimes, that the sale, without a change in the possession, is not perfected as against creditors. This is not precisely accurate. What we mean is, that the property is still liable to attachment upon process against the former holder, because an act has been omitted which is indispensable to release it from that liability. And this is an act affecting the rights under process only. We thus make the provision virtually a part of the process as to all personal property permanently located in this State, and not by statute exempt from process. It thus becomes a matter governed exclusively by the law of the forum.

It is true, that out of comity we do not apply it so as to defeat rights acquired in other States, as to property having its locality there. This would be to work fraud and injustice, and offensively to divest rights acquired *bona fide* under the laws of a foreign State; *Taylor* v. *Boardman*, 25 Vt. 581 ; *Jones* v. *Taylor*, 30 Vt. 42,

Rice & Danenbaum *v*. Courtis.

The requirements of the statute exempting one's last cow from attachment was held to be a matter pertaining to the remedy, and as such, extending to all process, whether *mesne* or final, within the State, whether the defendant or debtor resided within the State or not, or whether the property be permanently within the State or only came here casually; *Haskell* v. *Andrus*, 4 Vt. 609. And property exempt by statute from process may be legally transferred, as to all the world, without any change of possession; *McGregor* v. *Stiles*, 11 Vt. 375. This statutory exemption being in effect a part of the process, the requisite change of possession in regard to property not exempt, is thus something affecting the process itself, as it seems to us, rather than the contract of transfer.

It is not indeed so far a part of the process as to divest rights already acquired in other States, in reference to property casually coming within our jurisdiction. That would be to apply the process to property exempt from its operation, both by the contract of the parties and the law of the place where the property is situated.

But whether we call it a part of the remedy and a matter pertaining to our process, which to some extent it must be regarded, or call it a universal rule of policy in regard to the transfer of personal property situate within the State and having a place of more or less permanency here at the time of the transfer, so far as the right of attachment is concerned, it has been sufficiently shown already, that the requirement has its chief reference to, and operation upon, the rights of those who desire to attach or levy upon it with a view to enforce legal remedies.

This view sufficiently disposes of the distinction attempted to be made between the rights of this defendant to hold this property, because of the want of change in the possession, and the case of a strict and technical creditor, which the defendant probably is not, according to the usual definitions of that term. This change of possession is requisite to defeat the right to attach or to levy upon the property, and is not limited to the case of creditors, although in popular language it is more commonly so expressed. Our books abound with the expressions, that a *bona fide* sale without a change of possession is not valid as against

creditors.    But to be strictly accurate it should be said, that such sales do not prevent the property from being attached upon process against the vendor.

And that this is the real point of the doctrine is made apparent by the consideration that one may attach property in this State so situated, notwithstanding he may have full notice of the transfer, and have no reason to doubt or question its perfect fairness and adequate consideration.    But in regard to subsequent purchasers the rule is otherwise.    They cannot ordinarily purchase and hold property, although they first obtain the delivery, if, at the time of the purchase, they had full notice of a *bona fide* sale to another and the payment of the price.    Such a purchase is not regarded as *bona fide*.    This is certainly the rule of the English law.    The statute of the 27 ELIZABETH only extends to voluntary conveyances.    By the English law, as at present understood, a creditor who has knowledge of a *bona fide* sale of property by his debtor, and the payment of the price, which would change the title as between the parties to the sale, cannot justify attaching the property.    But in this State we regard the want of change of possession as a fraud in law, so far as the processes of our courts are concerned.    To that extent it is the same as if no sale had been made.    And we have applied this rule to all personal chattels remaining within the State at the time of transfer and not exempt from attachment, and to all modes of transfer, whether of the absolute title or the creating of a lien by way of pledge, a mortgage or by assignment for the benefit of creditors.    So that it will be necessary to show such change of possession in the present case, in order to enable the plaintiffs to hold the goods against the defendant's attachment. The proof in this case shows merely notice to a third party, in whose possession the assignee had placed the goods, as to that portion of them at New Haven.    This would be all that is required by the English law to effect a change of possession; Chitty on Contracts 412, *a*.    But in this State something more is required.    It seems to be indispensable, in order to defeat the right of attachment, that the vendee should, in such case, make the person having the goods in his possession his bailee; that he should consent to hold the goods for him.    This might be inferred,

undoubtedly, from the silence of the bailee, if he was requested to keep them for the vendee. But nothing of that appears in the present case. The rule laid down in *Whitney* v. *Lynde*, 16 Vt. 579, has been always adhered to in this State, so far as I know.

We are not aware that this rule in regard to the necessity of change of possession, in order to exempt property sold or assigned from attachment, exists, at present, in any other one of the American States. That was the rule in many of them for many years, but after the change of the rule in England it gradually changed in this country, until it has now become universal, out of this State, to regard the want of change of possession, before the attachment, as, at most, presumptive evidence of fraud, and in many of the States, and probably most of them, at the present time, it is merely evidence of fraud. In that view it would not defeat the plaintiff's title that they had not taken possession of the goods before the defendant's attachment, if they could satisfy the jury that the omission to take possession was consistent with the *bona fide* character of the assignment. But with us the decisions have been uniform to require a visible, substantial change of possession to perfect an assignment against attachments, and it has so far become a part of the settled policy of the State, and seems to us so far connected with the remedy, that, as to property within this State, we could not feel called upon to give an assignment for the benefit of creditors, made in another State, priority over an actual attachment of the property by the process of our courts, without such change of possession. Notwithstanding the validity of the foreign assignment to transfer the property here, we must regard it as still liable to be arrested by the process of our courts, until the assignment is carried into effect by the delivery of possession to the assignee, or his taking such possession. This act of possession is a local act, and its validity is to be determined by the law of the place where it occurs. It attaches to the forum rather than the contract, and is a matter affecting local policy, which no rule of comity could fairly justify us in disregarding out of deference to the law of the place of the domicil of the assignor, even if it were shown that the law of New York did not require such delivery in order to perfect the assignment as against attachments. But that does

not very clearly appear. It may still be the law of that State that the same change of possession is requisite to perfect an assignment there as here. But it is enough that such is the law here ; see the cases on this subject digested in Burrill, chap. XXV.

, In making this discrimination between the contract and the delivery or change of possession, we but carry out the same rule which we should apply to the ordinary contract of sale, where the property was within the State and the owner resided abroad. Any contract of sale valid by the law of the place where made, or where the vendor resided, will transfer the title of the property. But the vendee must here take actual possession, before the property is beyond the reach of process against the vendor. We hold the same in regard to assignments for the benefit of creditors. And we have always applied the same rule in regard to the assignment of choses in action. We do not regard the assignee as having perfected his priority against the process of foreign attachment against the assignor, until he has given notice to the debtor. This is different from the rule which obtains in New York, and in some, probably most, of the other States. It is there held that the assignment transfers the title, and if it is subsequently attached, by way of foreign attachment, even before notice of the transfer to the debtor, the assignment will take priority, if it be made to appear on trial that the assignment was in point of fact prior to the service of the attachment. But in this State the assignment is only regarded as perfected against attachments when notice is given to the debtor, that being regarded as equivalent to a change of possession, and an indispensable prerequisite, in order to put the property in choses in action beyond the reach of the process of foreign attachment against the assignor. This rule of law, in regard to choses in action attached by process of foreign attachment, has been adhered to with great strictness in this State, from the earliest times. And we are not aware that it has ever been relaxed. It has sometimes been regarded as an anomaly, and the courts have hesitated in regard to it. But upon examination it will be found to form an essential portion of our law, requiring a change of possession to perfect an assignment, as against the process of our

courts, in favor of persons having rights of action against the vendor.

As no sufficient change of possession was clearly shown in this case as to a portion of the property, and that question was withdrawn from the jury, the judgment is reversed and the cause remanded.