Grafton,
March 7, 1902.

## BALDWIN v. THAYER.

Whether a sale of personal property is accompanied by a change of posses-
sion sufficient to render the transaction valid against a subsequent attach-
ment by a creditor of the vendor, is a question to be determined by the law
of the state where the property is situate and the attachment is made.

Where lumber sold is permitted to remain in the possession of the vendor,
without any manifestation of ownership on the part of the vendee, the
acts of the former in drawing a balance of the lumber to a freight station
for shipment, requesting the railroad company to provide a car for the use
of the vendee, directing the issuance of a shipping receipt in the name of
the latter, and causing the car to be loaded by his own servants, do not con-
stitute a change of possession or notice of the vendee's ownership sufficient
to render the sale valid as against a subsequent attaching creditor, under the
law of Vermont.

Lumber drawn upon railroad premises by the vendor for the purpose of ship-
ment is not deemed to be in the constructive possession of the vendee unless
the vendor has parted with all control and custody of the property and the
railroad company has assumed the responsibility of a bailee in relation
thereto.

An attaching creditor is put upon inquiry as to the ownership of alleged
property of his debtor only when it is apparently in the open, visible, and
exclusive possession of a third person.

TROVER, for 10,000 feet, more or less, of lumber. Facts found,
and case transferred from the September term, 1901, of the supe-
rior court, by *Stone*, J.

July 13, 1900, at about nine o'clock in the forenoon, Eben C.
Getchell went to the defendant's store in Woodsville in this
county, and offered to sell him a carload of lumber of 13,000 feet
at $12 per thousand, less the freight to Barre, Vermont, the defend-
ant to pay him $50 cash, credit him the amount of his indebted-
ness ($51), and pay him the balance out of his store from time to
time. Thereupon the defendant went with Getchell to the Boston
& Maine Railroad station at Wells River, Vermont, and saw about
8,000 feet of the lumber which had been drawn to the station,
but not loaded on the car. The balance of the lumber was then
at Getchell's mill in Bath. After seeing the lumber at the station,
the defendant accepted Getchell's offer, the lumber to be drawn
to the station and loaded on a car by Getchell. They then re-
turned to the defendant's store, and Getchell drew up and deliv-
ered to the defendant the following writing: "Woodsville, N. H.,
July 13, 1900. E. H. Thayer to E. C. Getchell. To 13 M bds,

and spruce dimension lumber at \$12 per M. \$156. Received payment, E. C. Getchell." The defendant thereupon paid Getchell \$50 and credited him his \$51 indebtedness, and it was agreed that the defendant should deduct the freight on the lumber to Barre from the \$156 and furnish Getchell with goods from his store from time to time to the amount of the balance, which he has since done.

The same forenoon Getchell went to the railroad station at Wells River and told the station agent to set in a car for the defendant at the station, upon which he desired to load the lumber purchased by the defendant, and directed the agent that when a shipping receipt was issued it should be made out to the defendant. On the next day or the day after, the receipt was so issued.

Getchell's teams continued to draw the lumber from his mill to the station at Wells River until about four o'clock in the afternoon of July 13, when 13,000 feet had been drawn, and 8,000 to 10,000 feet had been loaded upon the car by Getchell's workmen. The same afternoon, at about the same hour, the plaintiff, a deputy sheriff at Wells River, attached all the lumber on a writ against Getchell in favor of one Tondrau, and on the next day the defendant gave a receipt therefor, as follows: " State of Vermont, Orange county, ss.   At Newbury, Vt. July 14, 1900.   Received of H. T. Baldwin, deputy sheriff, ten thousand feet more or less of lumber, valued at one hundred fifty dollars or the face value of the lumber as sold, which was attached by him in a suit *Tondrau* v. *Getchell*, which I agree to deliver to him on demand in good order as the same now is, free from expense to said H. T. Baldwin. E. H. Thayer."   The writ on which the attachment was made was duly entered in court and judgment rendered against Getchell for \$120.59, upon which an execution was duly issued and placed in the hands of the plaintiff, who seasonably demanded the attached property of the defendant, who refused to deliver it.

At the time the receipt was given, the defendant informed the plaintiff that he claimed to own the lumber, which was the first notice the plaintiff received that Getchell was not the owner. There was no evidence that the attaching creditor had any notice of the sale of the lumber before the attachment. The defendant gave Getchell's men no direction about drawing or loading the lumber, or any notice of his ownership, nor did he inform the station agent that he had purchased the lumber, or make any inspection or measurement of the same prior to the attachment other than that already described. There was no evidence of any secret trust or bad faith between the defendant and Getchell, unless it appears as matter of law from the foregoing facts.

The court ruled *pro forma* that the defendant was not guilty,

and the plaintiff excepted. If the plaintiff is entitled to judgment, it should be for $120.84 and interest from the date of the writ.

*Smith & Smith*, for the plaintiff.

*Scott Sloane*, for the defendant.

BLODGETT, C. J. Whether at the time of the attachment the title to the lumber in question had passed as between the vendor and the vendee, it is unnecessary to determine; for treating the transaction as a completed sale as to the parties, we think it was void as to the attaching creditor.

By the law of Vermont, as we understand it to be held and by which this case is to be determined, "a sale is fraudulent in law unless there is a change of possession; possession in the vendee, open, notorious, and exclusive; that is, apparent and such as would indicate to an observer a change of ownership; exclusive, not joint; and if any of these requisites are wanting to the sale, the property is liable to attachment by the creditors of the vendor, notwithstanding the *bona fides* of the transaction." *Weeks* v *Prescott,* 53 Vt. 57. "The rule in this state is well understood by the profession, that to render a sale of personal property valid against the vendor's creditors there must be a change of possession of the property from the vendor to the vendee; that the vendee's possession must be exclusive and apparent." *Wheeler* v. *Selden,* 63 Vt. 429, 431. "Our books abound with the expressions that a *bona fide* sale without a change of possession is not valid as against creditors. But to be strictly accurate, it should be said that such sales do not prevent the property from being attached upon process against the vendor. And that this is the real point of the doctrine is made apparent by the consideration that one may attach property in this state so situated, notwithstanding he may have full notice of the transfer, and have no reason to doubt or question its perfect fairness and adequate consideration. But in regard to subsequent purchasers the rule is otherwise." *Rice* v. *Courtis,* 32 Vt. 460, 468, 469, per *Redfield,* C. J.; *Hart* v. *Bank,* 33 Vt. 252, 263. "Notice of the sale of personal property without change of possession will not affect the claim of an attaching creditor of the vendor thereto." *Perrin* v. *Reed,* 35 Vt. 2, 8, 9. And "when personal property is sold which is in the custody of a third person, the vendee must himself, or by some person other than the vendor, give notice of the sale to the person in whose possession the property is, and such person must assent, and agree to keep the property for the vendee, or it will be liable

to be attached by the creditors of the vendor." *Whitney* v. *Lynde*, 16 Vt. 579, 580. "Without this notice the possession cannot be considered as changed, so that the property should not be subject to attachment at the suit of the creditors of the vendor." *Ib.*, 586. "The rule laid down in *Whitney* v. *Lynde* . . . has always been adhered to in this state, so far as I know." *Redfield*, C. J., in *Rice* v. *Courtis, supra*, 470. See, also, *Pierce* v. *Chipman*, 8 Vt. 334, 339, and authorities cited, and *Hart* v. *Bank, supra*, 263. The seller must become divested of the possession. *Chase* v. *Snow*, 52 Vt. 525, 529.

To this enunciation of what has been termed "Vermont's fraud-in-law doctrine," the only exception of which we are aware is, that in the case of personal chattels "cumbrous in character" and "difficult of removal," or when "removal is impracticable," the sale is valid against attaching creditors without an actual removal or manual change of possession (*Kingsley* v. *White*, 57 Vt. 565, 568); and within this exception are the cases of *Hutchins* v. *Gilchrist*, 23 Vt. 82, and *Birge* v. *Edgerton*, 28 Vt. 291, upon which much reliance is had by the defendant.

In the light of these decisions, do the facts before us show a change of possession so open, notorious, and exclusive as would inform the public, or those who were accustomed to deal with Getchell, that the property had changed hands, and that the title had passed to Thayer, at the time of the attachment? We cannot think so. On the contrary, we think there was no outward sign manifested, nor *indicia* exhibited, nor notice given, which could apprise the attaching creditor or the public of any change of possession or ownership. Certainly, Thayer had done nothing in these respects. So far as appears, he had seen but a portion of the lumber; had given no directions about it; had taken no charge of it; had notified no one of his claimed ownership; and, furthermore, although the larger part of the lumber was upon the premises of the railroad at the time of sale, he concedes and claims that all of it was then in Getchell's possession. Being admittedly in his possession then, and consequently liable to attachment as his property by a creditor having actual knowledge of the sale, when and how, during the six hours succeeding, did Getchell become divested of the possession and the lumber exempted from attachment by a creditor having no knowledge of the sale? The only acts on his part, in the meanwhile, in respect of the lumber, were, the drawing of the balance of it to the railroad premises with his teams; his request to the station agent to set in a car for Thayer upon which the lumber might be loaded; his direction that when a shipping receipt was issued, it should be made out to Thayer; and the loading of about three fourths of

the lumber on the car by Getchell's servants, who were actually so engaged when the attachment was made. Plainly, these acts did not effect a divestment of Getchell's possession. The possession of his servants was his possession; their acts were his acts; and something yet remained to be done in the performance of his contract of sale. Nor, during this period, had the railroad assumed or contracted any new obligation or relation to the property. No shipping receipt for it had been issued, no additional control of it taken, and no additional responsibility on account of it assumed.

The doctrine of constructive possession cannot be invoked by the defendant. The relation of bailor and bailee did not exist between him and the railroad. The lumber was on the railroad premises as a place of deposit merely. Doubtless personal chattels may be delivered by a vendor to a third person under an arrangement with him to hold them for the purchaser, and the title pass as against the vendor's creditor. But that is not this case. Suppose, however, that it were: in such a case the vendor must part with all control over the property, and not remain in the apparent possession and custody of it. Where there is actual possession, there is no place for constructive possession.

Nor can we assent to the defendant's further contention, that the plaintiff was bound to make inquiry of the railroad before attaching the property. It is only when the alleged property of the vendor or debtor is apparently in the open, visible, and exclusive possession of a third party that an attaching creditor is put upon inquiry. The contention is based upon the erroneous assumption that the railroad had such a possession when the attachment was made. The facts show the contrary to be true, and, beyond this, it is expressly found that "there was no evidence that the attaching creditor had any notice of the sale of the lumber before the attachment." In the most favorable view to the defendant which we think can possibly be taken consistently with the facts, the lumber was in the joint possession of Getchell and the railroad; but this would not shield or exempt it from attachment by Getchell's creditors.

The plaintiff is entitled to judgment for $120.84 and interest from the date of his writ.

*Exception sustained.*

All concurred.