ANDREW A. ANDERSON v. LEVI BRENNEMAN ET AL.

*Waiver of claim to merchandise under contract—Symbolical delivery of mort-
gaged merchandise—Filing of mortgage.*

A contract purchaser can waive his claim to a specific lot of merchandise
by consenting that it be sold to some other person, or pledged or
mortgaged to a creditor as the vendor's property, to revert to the
vendor; and if he does so, his ownership ceases, and the merchandise
must be regarded as the property of the vendor and liable to execu-
tion against him, subject to the rights of the later purchaser or
pledgee.

Where heavy merchandise like pig iron is mortgaged and the mortgage is
not placed on file, and there is no actual delivery or apparent change
of possession, there must be a sufficiently clear and unequivocal
designation of the property to serve as notice of the mortgage to cred-
itors or subsequent purchasers; and it is for the jury to decide under
proper instructions what is sufficient notice thereof.

Where only symbolical delivery of mortgaged chattels can be made and
they are left where the right of possession is uncertain, doubts must
be decided in favor of creditors and against the mortgagee, since he
could have protected himself fully by filing the mortgage.

Error to Marquette.   Submitted June 17.   Decided June 23.

TRESPASS on the case.   Defendant brings error.   Affirmed.

*Dan H. Ball* for plaintiff in error, as to delivery, cited
*Elmore v. Stone* Langd. Sel. Cas. 111 ; *Beaumont v. Brenyer*
id. 185 ; *Marvin v. Wallis* id. 228 ; *Castle v. Sworder* id.
257 ; *Colwell v. Keystone Iron Co.* 36 Mich. 51 ; *Fry v.
Miller* 45 Penn. St. 441 ; *Smith v. Putney* 18 Me. 87 ;
*Morse v. Powers* 17 N. H. 286 ; *Carpenter v. Snelling* 97
Mass. 452 ; *McPartland v. Read* 11 Allen 231 ; *Weld v. Cut-
ler* 2 Gray 195 ; Herm. Chat. Mortgages 203–6 ; Schouler
Pers. Prop. 504–6 ; *Pettitt v. Bank* 4 Bush 334 ; *Thoms v.
Southard* 2 Dana 475 ; *Thayer v. Dwight* 104 Mass.
254 ; *Whitney v. Tibbits* 17 Wis. 359 ; Story on Bailments,
§ 297.

*E. J. Mapes* and *F. O. Clark* for defendants in error, as
to delivery, cited *Gorham v. Fisher* 30 Vt. 428 ; *Prescott v.
Locke* 51 N. H. 94 ; 12 Amer. 57 ; Blackburn on Sales 151–4 ;
Benjamin on Sales 222 ; *Barrett v. Godard* 3 Mas. 111 ;
*Rapelye v. Mackie* 6 Cow. 253 ; *Fuller v. Bean* 34 N. H.
300 ; *Warren v. Buckminster* 24 N. H. 342 ; 2 Kent's Com.
496 ; *Russell v. Carrington* 42 N. Y. 118 ; *Davis v. Hill* 3
N. H. 382 ; *Barnard v. Poor* 21 Pick. 378 ; *Hanson v.
Meyer* 6 East 614. Where the goods sold are left with the
vendor the sale is presumed fraudulent : *Hatch v. Fowler* 28
Mich. 210 ; *Jackson v. Dean* 1 Doug. (Mich.) 525 ; *O'Don-
nell v. Seger* 25 Mich. 378 ; *Watkins v. Wallace* 19
Mich. 77.

MARSTON, C. J. Some of the questions discussed we
think do not fairly arise upon this record. The action is
brought against the sheriff for releasing a quantity of iron
levied upon by him by virtue of certain executions in favor
of the plaintiffs against the Marquette & Pacific Rolling Mill
Company.

The controversy is narrowed down to 30½ tons, which the
sheriff claims was the property of Sylvester T. Everett under
a contract with the company dated August 1st, 1877. Ten
and a half tons of this iron was made previous to the date of
the contract with Everett, and although sought to be applied
thereon afterwards, yet it previously had been mortgaged to
S. Coles as security for a debt of the company.

The record sets forth that "30½ tons had, by consent of
said Everett, been pledged by said Rolling Mill Company to
S. Coles of Marquette, to secure an indebtedness for supplies
advanced by said Coles to employees of said company, to the
amount of $521.97, and that said pledge had been made by
giving to said Coles two receipts for said iron as it lay piled
on the dock as aforesaid, and marking each pile with the
initials ' S. C.' " These receipts were as follows :

"Received, Marquette, July 28, '77, on the Rolling Mill
dock, twenty-five tons pig iron in piles Nos. 1, 2 and 3 ; 14½
tons of the above to be held by S. Coles as security for note

of the Marquette & Pacific Rolling Mill Co., due Aug. 18, '77—$300.   The balance, 10½ tons, to be held by S. Coles as security for note of the M. & P. R. M. Co., due Sept. 2, '77—$221.97.   When said notes are paid, the said iron is released and reverts to W. W. Wheaton, ag't.

"W. W. WHEATON, Tr. and Ag't."

"Rec'd check on 2nd National, Cleveland, $304.08, to take up note due Aug. 15, 1877."

"Received, Marquette, Sept. 19, '77, on the Rolling Mill dock, twenty (20) tons pig iron in piles Nos. 4 and 5, to be held by S. Coles as security for note of the Marquette & Pacific Rolling Mill Co., due Oct: 22, '77—$360.   When said note is paid, the said iron is released and reverts to W. W: Wheaton, ag't.

"W. W. WHEATON, Ag't."

Wheaton was the "treasurer, general manager and agent" of the Rolling Mill Company.

The first levy was made October 3, 1877.   After the levy was released, this iron was shipped to Everett, he having paid Coles the amount of his claims thereon.   There was evidence tending to show that this iron was not marked with Coles' initials or in any way, at the time the first levy was made.

Without passing upon the title, if any, which Everett acquired or took under his contract before inspection, acceptance or any other act was done to designate it as his, or to show that it was of the quality specified in his contract, let us see if this iron does not stand upon a different footing.

This iron was, with the consent of Everett, pledged by the company as its own property to secure a company debt, and was to revert to the company upon payment of the debt. This constituted a clear waiver by Everett of his rights under the contract.   Under his contract he was entitled to the first three thousand tons of No. 1 Bessemer iron manufactured by the company, and the company was not to manufacture any other iron until this quantity was made, and so fast as made it was to become the property of Everett.

As already said, whether Everett could or could not insist upon and claim the iron, as manufactured, to the amount

specified, it is clear that he could waive his right, and permit the company to sell or mortgage some of the iron as manufactured and in lieu thereof take iron subsequently manufactured. If he permitted or consented to a sale thereof no pretense could be made that he would not be bound thereby, and in case of a mortgage thereof he clearly would have lost all right as against the mortgagee. Would his waiver in case of a mortgage extend beyond this?

If the property was mortgaged to the full value thereof, as it is conceded this was, or even if not to the full value, it could hardly have been the intention of the parties that the iron so mortgaged could be considered as a part of the three thousand tons. If so, he might in addition to the contract price, be compelled to pay the mortgage debt, which was not his to pay, or if not paid, to lose the property on a sale thereof under the mortgage, and if sold under the mortgage to the mortgagee or a third party, none would claim that the iron so sold could be charged to Everett as a part of the three thousand tons which his contract called for. This also must have been the understanding of the parties. The security was given to Coles with Everett's consent, and when the debt secured thereby was paid, "the said iron is released, and reverts to W. W. Wheaton, ag't." Wheaton was the agent of the company and not of Everett. Had this iron been mortgaged to Coles without the knowledge of Everett, a very different question would have arisen, viz., the right of Everett to the iron under his contract. By his consent he permitted the company to treat the property as its own, to pledge it for the company's debts, and to provide for its return to them upon payment of the demand. This was utterly inconsistent with an absolute ownership in Everett. The iron being then the property of the company, the execution debtor was liable to levy, subject to the right of Coles.

It is not claimed that anything in the nature of a mortgage or notice, was placed on file in the proper office as required by our statute. By whatever name the arrangement with Coles may be termed, the object and only one was security for a debt. To be good as against the creditors of the Roll-

ing Mill Company, the proper instrument not having been placed on file, an "immediate delivery followed by an actual and continued change of possession" was absolutely essential. No such delivery and actual and continued change of possession of such bulky property could be expected or insisted upon. Yet there should be, even of bulky articles, such a clear and unequivocal designation thereof that creditors or subsequent purchasers could not be misled or be in doubt as to the nature of the transaction. What this should be, must be a question for the jury under proper instructions. It must also in this connection, be borne in mind that the creditor can protect himself by filing in the proper office his mortgage, or a copy thereof, where the articles are of that bulky nature that a symbolical delivery only can be made, and they are permitted to remain in a place where the possession may be equivocal or what could not be said to be an actual possession. Under such circumstances, where doubts exist, they must be solved in favor of the purchaser or creditor, and against the mortgagee, because he having power to protect himself fully and prevent others from being deceived, has not done so.

When we turn to the charge we find it even more favorable than the above would warrant, and that the plaintiff in error has no cause for complaint.

The judgment must be affirmed with costs.

The other Justices concurred.