BLANCHARD vs INGRAM.

Opinion delivered January 12, 1899.

*Mortgage—Delivery of Property—Attachment Lien.*

> The mere delivery of a written instrument, purporting to turn over to a mortgagee the possession of property, not then in view of the parties, unless the property be so situated that it cannot be gotten at, is not such a delivery of possession to one holding under an unrecorded mortgage, as will defeat the lien of a writ of attachment placed in the hands of an officer after the execution of such instrument, but before the actual taking of possession under it, as the execution of such instrument, gave no notice to anybody of any change in the possession of the property.

Appeal from the United States Court for the Northern District.

WM. M. SPRINGER, Judge.

Blanchard & Woods and Quigg & Berringer instituted separate attachments against J. R. Ingram. The two actions were consolidated and the Strahorn-Hutton-Evans Commission Co. filed an interplea. Judgment for interpleaders. Plaintiffs appeal. Reversed.

The facts of this case are: On the 29th day of January, 1895, J. R. Ingram executed a mortgage to the Evans-Hutton Commission Company on 225 head of cattle, to secure an indebtedness of $2,750, and an additional sum of 50 cents per head. On the 9th day of February, Ingram executed another mortgage on the same cattle, to the same parties, for the further sum of $300, and 50 cents per head. Both of these mortgages were on February 12, 1895, filed for record in Cleveland county, Okl. The cattle were afterwards taken from Oklahoma into the Indian Territory; and on the 20th day of August, 1895, the plaintiffs Blanchard & Woods filed their suit in the United States court for the Northern district of the Indian Territory, at Muscogee, to recover the sum of $325, and sued out an attachment, and delivered it to the marshal to execute. The writ shows that the marshal received the writ at 8 o'clock and 5 minutes p. m., August 20, 1895. On the same day, August 20, 1895, at 8 o'clock and 7 minutes a. m., the defendant, Ingram, executed to the appellee herein the following instrument: "Econtuchka, August 20, 1895. Eight o'clock and seven minutes morning. Know all men by these presents, that possession of all our cattle branded O Y O situated in the Seminole Nation, Creek county, Pottawatomie, or Cleveland County, O. T., mortgaged to the Chickasaw National Bank,

Strahorn-Hutton-Evans Commission Co., and Purcell National Bank, is hereby delivered to H. B. Sparks and L. C. Wantland, acting for the above named mortgagees, under the terms of said mortgages; this, the 20th day of August, A. D. 1895, eight o'clock and seven minutes a. m. J. R. Ingram & H. A. Ingram, by J. R. Ingram. Witnessed by W. S. Warner." This instrument was executed at defendant's (Ingram's) house, which was about 45 miles from where the cattle were located; and it is an admitted fact in the case that the writ of attachment went into the hands of the officer, and the attachment lien became fixed before the agents of the interpleaders got actual possession of the cattle under the paper delivery above set forth. There was a default judgement against the defendant, Ingram, for the debts due plaintiffs, and an order sustaining the attachments. The Strahorn-Hutton-Evans Commission Company filed its interplea, claiming the cattle levied on by the marshal, as assignees of the Evans-Hutton-Hunter Commission Company, and made the instrument above set forth the basis of their claim. Issue was joined on this interplea; a jury was waived; and a trial by the court; and the court found for the interpleader, holding that the instrument above set out was a sufficient delivery to defeat plaintiffs' attachment lien. Plaintiffs filed a motion for new trial which was overruled, exceptions saved, and appeal taken. Various exceptions were saved to the admission and rejection of testimony at the trial, but, from the view we take of the case, it will not be necessary to notice them.

*Hocker & Woods, S. S. Fears* and *N. B. Maxey,* for appellants.

*William T. Hutchings,* for appellee.

CLAYTON, J. Section 4743, Mansf, Dig. is as follows: "Every mortgage, whether for real or personal property,

shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage." In this jurisdiction "an order of attachment becomes a lien upon the property of the defendant, subject to seizure on execution for debts of the defendant in the county, from the time the order comes to the hands of the officer, and that, by levy of the attachment and judgment sustaining the same, such inchoate lien is perfected and takes precedence of the lien of a mortgage executed before the order of attachment came to the hands of the officer, but not recorded till afterwards." Cross v. Fombey, 54 Ark. 179, 15 S. W. 461. And, of course, a taking of possession of the property, by the mortgagee after the writ came into the hands of the officer would have the same effect; and this is conceded by counsel in their briefs. This case turned on the effect to be given to the instrument executed by Ingram & Ingram on August 20, 1895, to Sparks & Wantland, as agents of the mortgagee. It purports to give possession of the cattle claimed by interpleader, and attached by plaintiffs, to Sparks & Wantland, agents of the mortgagee, by a written instrument, without an actual delivery; and it is claimed by interpleader to be as effective, and appellants deny to it any such effect. Interpleader does not claim any lien on the cattle by virtue of the filing of the mortgage for record in Oklahoma, and this instrument was intended to be a substitute for record, and was given because it was feared that the cattle were about to be attached. It was not a sale nor a mortgage, but was simply an attempt to transfer the possession from Ingram to the mortgagee, in order to anticipate a contemplated attachment.

It is admitted that, if mortgagee had possession of the cattle at the time the attachment issued, the judgment in this case was correct, and should be affirmed; if it did not have possession at such time, the judgment should be reversed.

By the terms of the mortgages, the cattle were to be held and retained in the possession of the mortgagors; and they had been so held for about six months, three months of which time they were in the Indian Territory, and this fact was known to the interpleader (mortgagee.) We are of opinion that a delivery of an instrument of writing, purporting to turn over the possession of a herd of cattle, 45 miles away, is not of itself such a taking of possession of the property by a mortgagee holding an unrecorded mortgage as that it would defeat the lien of an attachment, duly impressed upon the property at any time before the actual possession was obtained. If the mortgagee relies upon possession of the mortgaged property to sustain his lien, as in this case, something more must be shown than the mere delivery of the paper above set out. At best, this possession claimed by the interpleader was no more than constructive possession. But "constructive possession under a chattel mortgage is ineffectual. The right to possession is by virtue of the contract, and not, as in an execution, by virtue of the law. Possession must be taken in fact. It cannot be taken by words and inspection. It must be actual, open, and public." Jones, Chat. Mortg. 186-375; 1 Cobbey, Chat. Mortg. 457. "A delivery of ponderous or bulky property by words only is of no effect. There must be some clear, unequivocal, and exclusive change of possession. The delivery should be such that creditors and subsequent purchasers will not be misled or left in doubt as to the nature of the transaction. What is a sufficient change of possession of such articles is a question for the jury. When the property is of a bulky nature, so that only a symbolical delivery can be made, and it is permitted to remain in a place where the possession may be equivocal, and doubts exist as to the sufficiency of the possession, it is said they should be solved in favor of the purchaser or creditor, and against the mortgagee, because he had the power to protect himself by filing or recording

his mortgage, and neglected to do so." Jones, Chat. Mortg. 187; 1 Cobbey, Chat. Mortg. 496. The burden of proving a delivery or change of possession is upon the person who claims to hold property by virtue of an unrecorded mortgage: Jones, Chat. Mortg. 189. We think no case can be found—certainly none has been cited, or discovered by us—holding that the mere delivery of a written instrument, purporting to turn over to the mortgagee the possession of mortgaged property not then in view of the parties, unless it is so situated that it cannot be gotten at (such as a cargo upon the seas), is notice to creditors and subsequent purchasers. The instrument of writing in the pocket of the mortgagee is no more notice than the unrecorded mortgage. The taking of possession is intended to perform the same purpose as the recording of the mortgage. Both are to give notice to creditors and subsequent purchasers; and therefore the one must be actual, open, and public, as well as the other.

The fact that this paper was executed before the writ of attachment was placed in the hands of the officer does not affect the case, because, as far as the paper is concerned, it gave no notice to anybody. It was as if it had never been written. It proved nothing necessary to be established in this case. Let the judgment be reversed, and at the request of counsel upon both sides of this case, made here in open court, judgment is here entered in favor of the appellants, for the amount of their respective claims, to wit, for the appellants Blanchard & Woods the sum of $341.25, for the appellants Quigg & Berringer the sum of $174.15, with costs, and that the attachments be sustained, and the property levied upon be sold, etc.

TOWNSEND, J., concurs.