STRAHORN-HUTTON-EVANS COMMISSION CO. v. QUIGG et al.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1899.)

No. 1,243.

1. CHATTEL MORTGAGES—VALIDITY OF UNRECORDED MORTGAGE—WHAT CONSTITUTES DELIVERY OF POSSESSION.

A written statement, delivered by a mortgagor of personal property by an unrecorded mortgage to the mortgagee, that possession of the property is thereby delivered to the mortgagee, accompanied by an order for its delivery on a bailee having it in his possession, does not constitute a delivery which will take the place of the record, and render the mortgage valid as against an attachment against the mortgagor which is delivered to the marshal before the mortgagee has taken actual possession of the property, or delivered the order to the bailee, under the laws of the Indian Territory, which provide that chattel mortgages shall be invalid unless recorded, and which make a writ of attachment a lien on the property of the defendant subject to levy thereunder from the time of its delivery to the officer.

2. SAME—POSSESSION.

The possession of a mortgagee, which will validate an unrecorded mortgage, must be actual, open, and public, so that creditors who inquire with reasonable diligence of those in actual possession of the mortgaged property will receive notice of the control and lien of the mortgagee.

3. SAME—DELIVERY TO MORTGAGEE.

Where mortgaged personal property is in the possession of the bailee of the mortgagor, notice to him is indispensable to a delivery of the possession to the mortgagee that will be effectual against creditors and purchasers.

In Error to the United States Court of Appeals in the Indian Territory.

William T. Hutchings, for plaintiff in error.

N. B. Maxey, S. S. Fears, J. W. Hocker, and Zol. J. Woods, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. Is the written statement of mortgagors of personal property by unrecorded chattel mortgages that the possession of the property is delivered to the mortgagee, and their order on the bailee thereof to deliver it to the agents of the mortgagee, a sufficient delivery of possession to sustain the mortgages against attaching creditors whose writs come to the hands of the marshal in the Indian Territory before any actual change of possession is effected, and before the bailee receives the order, or any notice of the transaction? This is the question which this case presents. The United States court in the Indian Territory answered it in the affirmative, and the United States court of appeals in that territory answered it in the negative, and this is the error assigned. The question arose in this way: In January and February, 1895, J. R. Ingram and H. A. Ingram made some chattel mortgages upon 225 steers which they owned to secure debts of about $3,400 and interest, and on August 20, 1895, when this litigation commenced, these mortgages were owned by the plaintiff in error, Strahorn-Hutton-Evans Commission Company, a corporation. On that day the cattle were in the possession of one Alex. Yargee in his pasture in the Indian Territory, and the mortgages had never been filed or recorded in that territory. J. R. Ingram was about 45 miles distant from the cattle, in the territory of Oklahoma. At about 8 in the morning he executed and delivered to the agents of the mortgagee a written instrument in which he stated that the possession of the cattle was delivered to them, as such agents, under the terms of the mortgages, and he gave them a written order on Yargee to turn the steers over to them. In the evening of that day, and before these agents had the actual possession of the cattle, before they presented their order to Yargee, and before he was in any way notified of the attempted change of possession, the defendants in error commenced actions in the United States court in the Indian Territory against J. R. Ingram, and issued and placed in the hands of the marshal writs of attachment against his property, which were subsequently levied upon some of these mortgaged cattle. Judgment was subsequently obtained against Ingram in these actions. In each of these attachment suits the mortgagee filed an interplea, and claimed the attached cattle under its mortgages and the paper possession we have described. The two suits were consolidated, and tried together by the court without a jury. Upon this trial, objection was made and exception was taken to the introduction in evidence of the mortgagors' written statement of August 20, 1895, to the effect that possession of the cattle was delivered to the agents of the mortgagees, and to oral testimony of the contents of the order on Yargee. The trial court received this evidence, held that the paper delivery of the cattle was sufficient to validate the mortgages without further change of possession, and awarded the cattle to the interpleader. The court of appeals in the Indian Territory reversed these rulings, and at the request and pursuant to the agreement of the parties and subject to the opinion of this court rendered judgment for the plaintiffs in the attachments against the interpleader. 48 S. W. 1066. This is the ruling challenged by the writ of error.

Under the statutes of the state of Arkansas, which are in force in the Indian Territory, "an order of attachment binds the defendant's property in the county which might be seized under an execution against him from the time of the delivery of the order to the sheriff or other officer," and every chattel mortgage is required to be recorded, and it becomes a lien upon the mortgaged property when it is filed for record, and not before that time. Mansf. Dig. Ark. §§ 325, 4742, 4743; Cross v. Fombey, 54 Ark. 179, 181, 182, 15 S. W. 461. The mortgages here in question were never recorded in the Indian Territory, and hence they never became a lien upon the property attached unless they were validated, and that lien was created by the possession taken by the mortgagees. The purpose of recording acts is to prevent the frauds upon creditors and subsequent purchasers that are sometimes perpetrated by means of secret liens and claims, and to compel owners and lien holders to give plain and public notice to creditors and purchasers of their claims upon property, to the end that the latter may not be deceived into giving credit to or into buying of an apparent owner when the beneficial interest or the real title in his property is held by another. One of the strongest indicia of ownership of or of a lien upon personal property is possession, and for this reason it is that the delivery of the possession of personal property to the mortgagee has been universally held to validate an unrecorded mortgage, and to be an effectual substitute for its record. The change of possession, however, which may have this effect must be of a character to accomplish the full purpose of the recording acts. It must be calculated to give a notice of the claim of a mortgagee as open and effectual as a record of the mortgage. It must be so open, public, actual, and apparent that the creditor or purchaser who undertakes to deal with the property would be likely to receive notice of the possession of the mortgagee, and through that of the lien of the mortgage, before he loaned his money or bought the property. A mere secret written or verbal statement made by or between the mortgagor and mortgagee, and known only to them or to their agents, to the effect that the mortgaged property is delivered to the mortgagee without any apparent or actual change of the immediate control over the property, has no such effect. And it ought to have none, because it tends, not to serve the purpose, and give the notice of a record, but to foster the very fraud which the record was designed to prevent, and to deceive creditors and purchasers into a reliance upon the apparent title of the mortgagor when the beneficial interest in the property is concealed in the mortgagee.

There are two reasons why the written statement of the delivery of possession made by the mortgagors in this case and their order on the bailee of the property did not constitute such a change of possession as will validate and sustain these mortgages against the creditors and purchasers of the mortgagors. The first is that they were not accompanied with an open, public delivery of the possession, such as was calculated to notify creditors and purchasers of the change of possession and control of the cattle, and the property was of the kind where such actual delivery was both possible and

convenient. They were mere paper recitals of a change of possession, while no actual change took place until after the marshal received the writs. The cattle were in Yargee's pasture, subject to the order and control of the mortgagors, when the writs were received by the officer, just as they had been during the entire summer. A creditor or purchaser who had then examined them, or had inquired of Yargee or of any other person in the actual control of them, would not have learned that the mortgagee had either a lien upon or a possession of them. The written declaration and order were in one of the pockets of some agent of the mortgagee, miles away from the stock and from the marshal when the writs came to his hands, and they gave no notice to him or to the creditors he represented of their existence, or of the facts they recited. They constituted no substitute for the record of the mortgage which the statute required. Our conclusion is that a mere verbal or written statement of, or order for the delivery of, the possession of mortgaged personal property to the mortgagee, unaccompanied with any actual change of possession or control thereof, will not sustain an unrecorded mortgage against attaching creditors or purchasers of the mortgagor. In order to accomplish this result, the possession of the mortgagee must be actual, open, and public, so that creditors and purchasers who inquire with reasonable diligence of those in actual possession of the mortgaged property will receive notice of the control and lien of the mortgagee. Jones, Chat. Mortg. §§ 186, 187; Cobbey, Chat. Mortg. §§ 497, 560, 640; Steele v. Benham, 84 N. Y. 634, 638, 640; Rogers v. Pierce (Neb.) 10 N. W. 535; Porter v. Parmley, 52 N. Y. 185, 189; Bank v. Sprague, 20 N. J. Eq. 13, 27; Wilson v. Hill (Nev.) 30 Pac. 1076, 1078; Thompson v. Yeck, 21 Ill. 73, 75.

The other reason why the attempted delivery to the mortgagee was insufficient to sustain the mortgages in this case is that the property was in the possession of the bailee, Yargee, and he was not notified of the order upon him, or of the attempted change of possession, until after the marshal had received the writs, and their liens had been fastened upon the property. Where personal property is in the actual possession of a bailee, notice to him is indispensable to a delivery of the property to a mortgagee that will be effectual against creditors and purchasers, because he is in the actual possession of the property, and there is no change of such possession until he receives notice of it. Whitney v. Lynde, 16 Vt. 579, 586; Tuxworth v. Moore, 9 Pick. 347, 348; Carter v. Willard, 19 Pick. 1, 11; Lanfear v. Sumner, 17 Mass. 110, 114.

The judgment of the United States court of appeals in the Indian Territory is affirmed.