LEE WILSON & COMPANY *v.* CRITTENDEN COUNTY BANK & TRUST COMPANY.

### Opinion delivered March 20, 1911.

1. MORTGAGES—EFFECT OF ORAL MORTGAGE WITH DELIVERY OF POSSESSION.—An oral mortgage, accompanied by delivery of possession, is as effective for all purposes as if in writing.  (Page 383.)

2. PLEDGE—NECESSITY OF POSSESSION.—In order to constitute a pledge, it is necessary that possession of the personal property be transferred as security for the debt or obligation. (Page 384.)

3. MORTGAGES—WHEN INDISTINGUISHABLE FROM PLEDGE.—There is no distinction between a verbal chattel mortgage and a pledge, it being essential in both that possession of the chattel be delivered to and retained by the creditor. (Page 384.)

4. VERBAL MORTGAGE—NECESSITY OF POSSESSION.—In the case either of a verbal chattel mortgage or a pledge the possession of the mortgagee or pledgee must be absolute, unequivocal and notorious, so that all persons may be advised of the change in possession thereof. (Page 384.)

5. VERBAL MORTGAGE OR PLEDGE—POSSESSION.—Where, in case of a pledge or verbal mortgage of a stock of lumber, the only act of the pledgee or mortgagee, looking toward taking possession of it, was to go and look at it several times, this was insufficient to put strangers on notice. (Page 386.)

6. AGENCY—ADMISSIONS OF AGENT.—Where an agent was placed in possession of a stock of lumber by a mortgagee, the acts and admissions of such agent relative to such possession are within the scope of his authority and binding upon the principal. (Page 388.)

Appeal from Crittenden Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*Percy & Hughes,* for appellants.

1. This case is ruled by the case of the *Bank of Black Rock* v. *Decker,* 65 Ark. 33. The transaction was a mortgage, good between the parties, but void as against subsequent innocent purchasers. Interpleaders being such purchasers, they hold title to the property free of the bank's lien. Kirby's Dig. § 5396.

2. Whether the transaction be regarded as an unrecorded mortgage or as a pledge is immaterial. Delivery of possession is essential in either case. Here there was no such delivery or change of possession as would constitute notice to subsequent purchasers. 44 Mich. 196, 6 N. W. 222; 84 N. Y. 634; 206 U. S. 415; Jones on Chattel Mort. § § 186, 187; 97 Fed. 735.

3. If Coverdale was the bank's agent, it is bound to his acts, and estopped to assert a claim. 41 N. J. Eq. 336.

*A. B. Shafer,* for appellee.

This case is not ruled by the Decker case, 65 Ark. 33. The essential difference between a mortgage and a pledge is that in a mortgage the title to the property always passes, while in a pledge possession only passes, the title remaining in the pledgor.

The agreement between the lumber company, Coverdale and the bank that Coverdale should hold possession of the lumber for the bank, that the lumber company should have the right of sale, but could not move the lumber until the bank was paid, constituted a pledge on the part of the lumber company. The lien of the bank was not prejudiced by the failure of Coverdale to disclose to the purchasers that he was holding for the bank nor that it held a lien on the lumber for advances made. 55 S. W. 709; 30 Wis. 81; 6 Cyc. 1053 and cases cited; 60 N. Y. 40; 126 Ala. 194; 57 Ia. 651; 22 N. H. 196.

FRAUENTHAL, J.   This was an action instituted by the Crittenden County Bank & Trust Company, plaintiff below, against the Clements-Stevens Lumber Company and N. C. Coverdale, seeking to recover judgment upon a note and acceptance due by them to plaintiff, and to have the same declared a lien on a lot of lumber, and for the foreclosure of such lien. At the time of filing the suit, plaintiff also sued out a specific attachment for the enforcement of said lien, which was levied upon the same lot of lumber. Lee Wilson & Company and the Kansas City Packing Box Company filed separate interventions in the case, in which they claimed to be the owners and in the possession of said lumber by reason of having purchased same from the said lumber company and executed bonds for the retention thereof.

Upon the trial of the case the chancellor found that the defendants were indebted to plaintiff upon said acceptance and note, and that the said lumber had been pledged to it for the payment thereof. A decree was entered in favor of plaintiff for the amount of said indebtedness, and the same was declared a lien, by reason of said pledge, upon said lumber; and a return thereof by the interveners was ordered, and in the event same was not returned it was decreed that judgment should be had upon the bond of said interveners for the value of said lumber.

The evidence adduced upon the trial of this case was virtually undisputed, and the case that is thereby presented is as follows:

The defendant Coverdale was engaged in the manufacture of lumber at Marion, Ark., and on September 17, 1909, he had stacked upon his yards 198,300 feet of gum lumber. This lumber was stacked in piles upon an acre of land which had been

leased by said Coverdale. On said day he sold said lumber to the Lumber Company, and executed to it a bill of sale therefor, and also executed to it a written lease of the said acre of ground upon which said lumber was stacked. In order to make a payment to Coverdale upon said lumber, the Lumber Company on September 17 accepted a draft drawn by him upon it for $375, payable November 17, 1909, and some days later executed a note to him for $500, due sixty days after date. In order to obtain the money upon said draft and note, the manager of the Lumber Company and Coverdale went to the plaintiff, which was engaged in the banking business, and agreed to sell same to the plaintiff. Plaintiff purchased the paper from Coverdale, who indorsed the same; and, in order to secure the payment thereof, it was agreed between said parties that the said 198,300 feet of lumber should be pledged to it. The cashier of plaintiff testified that at first he refused to purchase the paper, but the manager of the Lumber Company said to him that he was perfectly safe in handling the paper, and that he could have the lumber as security until it was paid. "I said, 'About the possession of that lumber?' and turned to Mr. Coverdale, and asked him if he would hold the lumber on the yard for the bank until the acceptance was paid. He said 'Yes,' and it was agreed that Mr. Coverdale should hold the lumber on the yard for the bank until same was paid." This agreement was made at the office of the bank. Some days later the cashier of the bank walked over to where the lumber was, and looked at it, and probably did this on several other occasions. But there was no actual change made in the location of the lumber, nor were there any marks or other outward indicia of change of ownership placed upon it. Nor did Coverdale place any marks upon the lumber, or in any way make any outward and visible evidence that the possession of the lumber had been altered or changed. The only testimony relative to any delivery or change in the possession of said lumber was that it was agreed between the parties that Coverdale should hold possession for the plaintiff in order to secure the payment of said acceptance and note, and that thereafter the plaintiff's cashier walked around and looked at said lumber on several different occasions.

On September 23, 1909, the Lumber Company sold to the intervener, Kansas City Packing Box Company, 150,000 feet of

said lumber, upon which the intervener paid the sum of $1,125, with the agreement that upon final measurement it would pay any balance that might be due at the price at which it purchased.

Later, the intervener, Lee Wilson & Company, purchased the remainder of said lumber, paying thereon at the time $350, with a like agreement that upon actual final measurement it would pay any remainder that might be due at the price at which it purchased.

At the time these interveners purchased said lumber, the Lumber Company executed to them bills of sale for the lumber so purchased, and the parties went over and examined and counted the identical stacks of lumber which they respectively purchased, and at the time marked said lumber in their respective names. At the time the interveners purchased the lumber, Coverdale was present, and made no statement that he was holding possession for the plaintiff, or that plaintiff had any interest whatsoever in said lumber. On the contrary, the manager of the Lumber Company stated in the presence of Coverdale to the purchasing interveners that the Lumber Company owned the full title to said lumber, free of any lien. Some time later the interveners began to move said lumber, when this suit was instituted.

Upon this state of the case, we think that in order to secure the payment of the indebtedness to the bank, evidenced by said acceptance and note, which had been executed by it to Coverdale, the Lumber Company either mortgaged verbally or pledged the lumber involved in this suit to the plaintiff. It was simply agreed between the parties verbally that the lumber should be and remain as security for the payment of said indebtedness, and we think that the rights of the plaintiff to enforce its lien thereon as against innocent purchasers thereof would be the same whether it should be considered that the agreement was a verbal mortgage or a pledge. In either case it was necessary that the lumber should be delivered to and the possession thereof turned over to the plaintiff in order that its lien should be effective as against innocent purchasers thereof for value. In order that a mortgage shall constitute a valid lien upon chattels as against third persons, when the mortgagor retains possession thereof, it is necessary that it shall be in writing, duly acknowledged and filed for record; the filing of same for record being, by virtue of the statute, legal

notice thereof to all persons. But where a mortgagee takes actual possession of the mortgaged property, such notice is given to third persons as effectually as the filing of such mortgage for record. It is therefore well settled under our law that if a mortgagee takes possession of the mortgaged chattels before any right or lien attaches in favor of third persons, his title thereunder would be perfectly valid although the mortgage was not acknowledged or recorded. A valid mortgage may be created verbally as well as by writing; and therefore if the possession of property is actually turned over to one in order to secure the payment of indebtedness, it becomes as effective as a mortgage as if the agreement was in writing, and the possession of the mortgaged chattel would make such agreement valid and binding as to third persons. *Applewhite* v. *Harrell Mill Co.,* 49 Ark. 279; *Garner* v. *Wright,* 52 Ark. 385.

Now, in order to constitute a pledge, it is necessary that the possession of the personal property be transferred as security for the debt or obligation. Possession of the property is of the very essence of a pledge, and without such possession in the pledgee there can be no privilege thereunder as against third persons. The only distinction between a chattel mortgage and a pledge is that in the case of a pledge the legal title remains in the pledgor, and no writing is required, the property being simply delivered to the pledgee; when a mortgage is executed, the legal title passes to the mortgagee, but the possession of the property remains with the mortgagor, and the agreement is evidenced by writing. In the case of a mortgage, therefore, the delivery of possession to the mortgagee is not absolutely necessary, and the record of the instrument is only required in order to make it effective as against third persons.

But where the transaction constitutes a verbal mortgage, and the possession of property thereunder is turned over to the mortgagee, there is no distinction between it and a pledge. In both cases it is essential, in order to make valid the lien of the creditor as against third persons, that the possession of the chattel should be delivered to and retained by the creditor. *Peet* v. *Burr,* 31 Ark. 34; *Casey* v. *Cavaroc,* 96 U. S. 467; 6 Cyc. 790.

So that, whether we consider the transaction in this case, in which the lumber was put up as security to the bank for the pay-

ment of said draft and note, a mortgage or a pledge, it was essential that the possession of the lumber should have been turned over to the bank or some one for it, and held exclusively by it; and the sole question for determination is whether or not there was sufficient delivery of the property to the plaintiff or its agent under the testimony adduced on the trial of this case.   In order to constitute such delivery of property, either to the mortgagee or the pledgee, there must be an actual transfer of the possession and control thereof.   The possession should be absolute, unequivocal and notorious, so that all persons may be advised of the change in the possession thereof.   Where property is susceptible of actual delivery, that should be made; but where the property is too bulky for an actual change of its possession, a symbolical delivery can be made.   In a change of possession of bulky articles, there should be a clear and unequivocal designation, so that all persons dealing therewith, especially subsequent purchasers, should not be misled or left in doubt as to the nature of the transaction.

As is said in the case of *Anderson* v. *Brenneman,* 44 Mich. 198, in referring to the symbolical delivery of articles of a bulky nature which are permitted to remain in a place where the possession may be equivocal, "under such circumstances, where doubts exist they must be solved in favor of the purchaser."

In the case of *Strahorn-Hutton-Evans Com. Co.* v. *Quigg,* 97 Fed. 735, it was claimed that the possession of mortgaged property had been turned over to the mortgagee in a case where the mortgage had not been properly filed for record.   In that case the court said:   "One of the strongest indicia of ownership of or of a lien upon personal property is possession, and for this reason it is that the delivery of the possession of personal property to the mortgagee has been universally held to validate an unrecorded mortgage and to be an effectual substitute for its record.   The change of possession, however, which may have this effect must be of a character to accomplish the full purpose of the recording acts.   It must be calculated to give notice of the claim of the mortgagee as open and effectual as a record of the mortgage.   It must be so open, public, actual and apparent that the creditor or purchaser who undertakes to deal with the

property would be likely to receive notice of the possession of the mortgagee."

And the same is true of a pledge. In the case of *American Pig Iron S. W. Co.* v. *German*, 126 Ala. 194, in speaking of the notice that it is requisite to give to the public of the pledgee's interest in property by reason of possession thereof, it is said: "Such possession, however, to be effective either for notice or to give validity at law to the pledge, must be complete, unequivocal and exclusive of the pledgor's possession in his own right."

We think that this case is ruled by the case of *Bank of Black Rock* v. *Decker*, 65 Ark. 33. In that case a controversy arose between the mortgagee and purchaser of certain lumber. The owner of the lumber had borrowed money from the Bank of Black Rock, and to secure the payment thereof had executed a written instrument in which he transferred the lumber to it for the purpose of securing said indebtedness. Thereafter, and before said instrument was filed for record, the owner of the lumber sold same to an innocent purchaser. It was claimed by the Bank of Black Rock, in order to obviate the necessity of record notice to said purchaser, that the lumber had been delivered to it before such sale, and was in its possession. In that case the lumber was stacked in piles upon the yard of the owner, and the cashier of the bank and the owner of the lumber went to the lumber and the owner formally delivered possession thereof to the cashier, who "took possession while walking around it." But he placed no notice or marks on it to indicate the bank's ownership thereof. Subsequently, the lumber was sold to an innocent purchaser. In that case this court said: "Under these circumstances, we are of the opinion that the bank did not have such possession of the lumber as to supply the place of record notice to third parties. The bank should either have recorded its mortgage, and thus given notice of its lien, or it should have taken and retained actual possession of the lumber in order that subsequent purchasers might not' be misled. This was not done. As actual possession of the lumber was not taken and retained by the bank, the constructive delivery and possession taken while walking around the pile of lumber amounted to nothing so far as the rights of subsequent purchasers were concerned."

In the case at bar the plaintiff and the manager of the Lum-

ber Company were not actually present where the lumber was situated when the agreement that it should be security for the payment of the draft and note was made. In this respect the case at bar differs from the above case. It also differs from it in that the transfer of the lumber in the case at bar was made verbally, while in the above case it was made by a written instrument. In the case at bar there were no marks or other notice placed on the lumber to indicate the ownership of the bank thereof, and the cashier simply "walked around the lumber" as was done in the case of the *Bank of Black Rock* v. *Decker, supra.* In the case at bar it was further agreed that Coverdale should hold possession of the lumber for the bank, but Coverdale took no steps to take possession of the lumber other than had been taken by the bank itself. The lumber was actually located upon land which he had leased to the Lumber Company, and the possession of which he had turned over to the Lumber Company; and Coverdale himself had no actual possession thereof. So that the possession of Coverdale was no more effective than the possession of the bank.

Under these circumstances, neither the bank nor Coverdale took or obtained possession of the lumber in any other manner than was done in the case last above cited. In that case it was held that such alleged possession amounted to nothing, so far as the rights of subsequent purchasers were concerned, and we are therefore constrained in the case at bar to make the same holding. Therefore, whether we consider the agreement made between the owner of the lumber and the plaintiff as a verbal mortgage or as a pledge, there was not a sufficient delivery of the lumber to the plaintiff or its agent in order to make its lien or title valid as against innocent purchasers thereof.

It is urged by counsel for plaintiff that the interveners were not *bona fide* purchasers of the lumber, but we find no testimony to sustain such contention. The evidence clearly shows that the interveners purchased this lumber in good faith, and paid therefor. It further shows that the amount of the payments exceeded the price of the lumber after the same was actually measured, so that they paid full value therefor; and there is no testimony from which it can possibly be inferred that their purchases were made with an intent to defraud the plaintiff or any one else.

In addition to this, Coverdale, the alleged agent of the plaintiff to hold possession of the property, was present at the time interveners purchased same, and made no statement that he held possession thereof for plaintiff, or that plaintiff had a lien thereon. On the contrary, it was stated in his presence by the manager of the Lumber Company that it owned the full title to the lumber, free of any liens. The object of placing Coverdale in possession of the lumber was to notify all third persons having dealings therewith of the interest of the bank therein, and therefore the acts and admissions of Coverdale made relative to the possession of the property and the interest of the plaintiff therein were within the scope of his authority as such agent, and under such circumstances the plaintiff would be bound thereby. *Quinn* v. *Sewell,* 50 Ark. 380; 31 Cyc. 1587; 1 Am. & Eng. Enc. Law 1143.

It follows, therefore, that, under the uncontroverted evidence adduced upon the trial of this case, the interveners were innocent purchasers of the lumber involved in this suit, and obtained title thereto free from any alleged lien or claim of the plaintiff.

The chancellor erred in the decree which he rendered herein against the interveners; the same is therefore reversed, and a decree will be entered here in favor of the interveners for the retention of said lumber.