## DEALERS' FINANCE CO. v. COULTER.

District Court, W. D. Arkansas.
Oct. 12, 1931.

Ray S. Gibson, of De Witt, Ark., for Dealers' Finance Co.

YOUMANS, District Judge.

Dealers' Finance Company filed a petition with the referee praying that certain notes executed by various individuals to the bankrupt be turned over to it for the reason that the title thereto had passed to the claimant under an agreement made October 2, 1928, by which the bankrupt agreed to turn over to Dealers' Finance Company notes subsequently obtained to secure a note executed by the bankrupt on October 2, 1928, to the Dealers' Finance Company for $6,169.27. The petition in bankruptcy was filed February 8, 1929. The trustee filed objections to the petition of Dealers' Finance Company on the ground that the notes were not delivered to the Dealers' Finance Company within four months prior to the adjudication in bankruptcy.

The testimony shows that on October 2 [1928], the bankrupt was indebted to the Jenkins Music Company in the sum of $6,-189.27. Mr. Walter Everly was the manager of the Jenkins Music Company, and also of the Dealers' Finance Company. He was called as a witness by the trustee in bankruptcy and testified to the execution of the note as follows: .

"When I called on Mr. Walker the first part of October, 1928, he was owing Jenkins Music Company several thousand dollars. Part of it was past due and Dealers' Finance Company—I was representing Dealers' Finance Company at that time—made an agreement with Mr. Walker that the Finance Company would loan him sufficient amount of money to pay his account with Jenkins Music Company; we would take a note for it to be collateralized with installment paper at the rate of one and one-half to one. We were to have approximately nine thousand dollars in collateral deposited against the note. The note was drawn by me, signed by Walker and then when he came to turn over to me the proper collateral he found he did not have sufficient paper to collateralize the note, with the result that I obtained at that time approximately six thousand dollars collateral leaving a deficit of approximately $3,000.00. I then had a definite arrangement with Mr.

Walker personally that he would forward to Dealers' Finance Company a sufficient amount of collateral to properly cover the note.

"To bring up the $9,000.00 on the basis of one and one-half to one, Walker stated that he would be able to do that shortly as he had several good sales of instruments pending, some instruments in the customers' hands on demonstration and he would have collateral available to complete this transaction. He urged that we accept the proposition upon that basis because of the fact that he wanted to pay his account with Jenkins and wanted the money from this note for that purpose, and I had definite assurance that he would promptly bring the collateral up to the proper amount by sending additional contracts."

The contracts referred to were for musical instruments sold by the bankrupt. The four months' period preceding bankruptcy began with October 8, 1928. The contracts were title-retaining contracts upon the musical instruments sold by the bankrupt. The contracts in controversy were those assigned by the bankrupt to the Dealers' Finance Company within four months prior to February 8, 1929.

The attorney for the Dealers' Finance Company contends that the agreement having been made prior to the beginning of the four months' period, the contracts secured subsequently by the bankrupt passed under the contract by relation to that date. The trustee contends that under the Bankruptcy Law that result would not follow. According to the agreement the contracts of purchase for the musical instruments were to be assigned as a pledge to secure the payment of the note. Delivery of possession is essential to a pledge. In re Herkimer Mills Company (D. C.) 39 F.(2d) 625. Lee Wilson & Co. v. Crittenden County Bank & Trust Co., 98 Ark. 379, 135 S. W. 885.

Validity of pledge of future accounts depends upon local law. In re Robert Jenkins Corporation (C. C. A.) 17 F.(2d) 555.

"To the amount of credit extended without requiring the stipulated security the appellant became an unsecured creditor, and whatever was received during the four months and applied upon the unsecured debt that had been incurred prior to such payment was preferential, and properly required to be restored before allowance of the general claim." In re Evansville Broom Co. (C. C. A.) 29 F.(2d) 643, 645.

Upon the authority of the cases above cited, the agreement between Mr. Everly and

Mr. Walker did not have the effect to carry with it subsequent contracts for the sale of musical instruments.

 The next question raised is that the Dealers' Finance Company did not know at the time that the subsequent contracts were assigned to it the bankrupt was insolvent, and that it had no reason to believe that it was insolvent.

As stated, Mr. Everly was the manager both of the Jenkins Music Company and the Dealers' Finance Company. Whatever information that he acquired in one capacity he also had in the other. He acted in different capacities but in so doing he did not lose his identity. What he knew as manager of the Jenkins Music Company did not pass out of his mind when he acted as manager of the Dealers' Finance Company, and vice versa. On September 14, 1928, Mr. Everly, as manager of the Jenkins Music Company, wrote a letter to the J. W. Walker Music Company. In that letter is the following statement: "You can understand that it is rather discouraging for our Finance Company to consider taking more of your notes when you are not able to meet the payments on the ones they are already carrying, so there is a difficult problem for us to work out."

On October 2, 1928, Mr. Everly went to El Dorado, Ark., to see Mr. Walker of the J. W. Walker Music Company. On that date Mr. Walker presented to Mr. Everly a balance sheet purporting to show the financial condition of the J. W. Walker Music Company on May 1, 1928. The effect of that balance sheet was to show that the J. W. Walker Music Company on that date, May 1, 1928, was solvent. On October 23 [1928], Mr. Everly, as manager of the Dealers' Finance Company, wrote to the J. W. Walker Music Company, and in that letter made the following statement: "The writer talked with you over the telephone last Friday and you agreed to immediately mail us a draft to cover your check which came back. This is Tuesday morning and the draft has not reached us. It is certainly disappointing that the plan arranged with you when the writer was in your office is not starting off more auspiciously and it will not be possible for us to continue your supply of Victrolas unless you live up to your part of the agreement. You understand, Mr. Walker, that we cannot continue with matters in their present condition, unless you can begin at once to reduce this past due indebtedness, because you well know that the collateral you have with us is constantly depreciating at a much faster rate than you are cutting down the amount of your indebtedness and we are sure you cannot expect us to permit this condition to go on very long."

That letter disclosed that the J. W. Walker Music Company had sent to the Dealers' Finance Company a check "which came back." That means that on presentation the check was unpaid. The letter also disclosed that the J. W. Walker Music Company had promised to send a draft, which promise they had not kept. The situation was such that the Dealers' Finance Company had reasonable cause to believe that the collection of such contract would effect a preference under section 96 (a, b), title 11, U. S. C. (11 USCA § 96 (a, b).

All assignments of contracts secured after the date of that letter were voidable preferences.

The order of the referee will be modified, in that it will not apply to assignments made prior to October 23, 1928. It will be affirmed as to all assignments of contracts made after October 23, 1928.